### McCANN v. O'BRIEN.

(Supreme Court, Appellate Division, Second Department. May 2, 1899.)

1. ASSIGNMENTS FOR CREDITORS—FEES OF ASSIGNEE.
   Though General Assignment Act 1877, § 26, as amended by Laws 1878, c. 318, § 7, provides that an assignee shall receive 5 per cent. on the amount of money coming into his hands as compensation for his services, an assignor may agree to pay a larger sum, where the creditors are no longer interested.

2. SAME—RELEASE OF ASSIGNEE—DURESS.
   Where, within a few days after making an assignment, the assignor effected a composition with his creditors, the fact that the assignee refused to thereupon reassign the property except on condition that he might retain what he regarded as his statutory fee, and that the assignor should execute a release to him for all matters connected with the assignment, did not constitute duress, invalidating the release.

Appeal from judgment on report of referee.

Action by Patrick McCann against Thomas O'Brien individually and as assignee of plaintiff. From a judgment in favor of defendant dismissing the complaint, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Samuel Greenbaum, for appellant.

G. A. Seixas, for respondent.

WOODWARD, J. Neither the conduct of the plaintiff, nor the character of this action, is intended to appeal strongly to a court of equity. One of the first considerations of equity is the limiting of the number of actions, while the only practical result, should the plaintiff succeed here, is to reopen a litigation in which it is by no means clear that the equities are in favor of the plaintiff, or that any considerations of justice are involved. In November, 1879, the plaintiff, becoming financially involved, made a general assignment to the defendant for the benefit of his creditors. Defendant was in the employ of Dunham, Buckley & Co., who were among the important creditors of the plaintiff, and it was at the suggestion of this firm, to whom the assignment was offered, that the defendant was made the assignee. The assets consisted principally of the retail stock of goods in the store conducted by the plaintiff, and a certain piece of real estate, which is not very material to be considered. Defendant took possession of the property, and about six weeks later plaintiff succeeded in making a composition with his creditors for 33⅓ per cent., whereupon he asked his assignee to reassign the property. This the defendant, not having as yet advertised for claims of creditors, refused to do, except upon the conditions (1) that the plaintiff give a satisfactory bond, in the sum of $10,000, to indemnify him against any claims which might be filed; (2) that the plaintiff would permit the defendant to retain his fees, aggregating, upon the estimated value of the assigned property, $1,465.92; (3) that the plaintiff execute a release to the defendant for all matters in connection with the assignment. These conditions were complied with, and the plaintiff was put into possession of the assigned property, though there was never any formal conveyance of the real estate, independent of the reassignment of the assignee. Some time after the reassignment, the plaintiff entered the store of Dunham, Buckley & Co., and requested a Mr. Strain, who had kept the books for the defendant in the matters of the assignment, to give him a statement of the account. This was done, and in the statement thus made of the disbursements appeared the matter of $1,465.92 paid to the defendant as fees as assignee. When the statement was handed to the plaintiff, it showed a balance due him of something like $500. The plaintiff then said that Dunham, Buckley & Co. had been to considerable trouble in his behalf, and that he desired to pay over to them a sum equal to the difference between 33⅓ per cent. and 50 per cent.; and, upon the firm acquiescing in the proposition, the difference was figured out and charged to the plaintiff, the balance of $140.65 being paid by a check of Dunham, Buckley & Co., the plaintiff giving his receipt in full of all demands to date. Sub-

sequently the plaintiff purchased goods of Dunham, Buckley & Co., and in February, 1881, a statement of account rendered him showed an indebtedness to the firm of $1,500. He at this time demanded that the $412 which he had voluntarily paid to the firm a year before should be credited upon the account; and, this being refused, he declined payment of the account until after an action was begun and an attachment was caused to issue. In the March following, plaintiff began an action in the court of common pleas to compel the defendant to account as assignee; this action being dismissed after a long and expensive trial, the referee holding that the release to the defendant was a bar to the action. The plaintiff appealed from the order confirming the report of the referee, which appeal was pending at the time this action was commenced. It is now specially urged that this release should be set aside; the ground being that the plaintiff was under duress, and that he should be allowed to compel an accounting on the part of his assignee. It is also insisted that the defendant had no right to exact the amount of fees paid to him; the statute providing that he should receive 5 per cent. upon the amount of money coming into his hands. Section 26, General Assignment Act 1877, as amended by section 7 of chapter 318 of the Laws of 1878; In re Hulburt, 89 N. Y. 259. Upon the trial, the referee found in favor of the defendant; and from the judgment entered appeal comes to this court.

While it is true that under the provisions of the statute, as construed by the courts, and correctly we believe, the defendant could not retain more than 5 per cent. upon the amount of money coming into his hands, where the rights of creditors are involved, there is no law which prevents the assignor agreeing to give a larger sum where the interests of creditors are no longer to be considered. "When one voluntarily consents to act as assignee," say the court in Re Hulburt, supra, "he must either take what the law gives him, or, where the rights of creditors are not concerned, what the assignor agrees to give him." In the case at bar, the creditors were no longer concerned. They had all been paid the amount agreed upon. The plaintiff was anxious to come into the possession of the property. There is no evidence that the defendant acted in bad faith in the matter; and, at most, there was a mistake as to the provision of law governing the amount of the fees. The plaintiff had received the benefits of the assignment. He had, by putting the property into the hands of the defendant, been able to compromise his debts for one-third,—a result which could not, in all probability, have been accomplished had it not been for the fact that the defendant could, under the law, prevent any attempt at recovery of any part of the indebtedness for a period of one year. Having had the benefits of this proceeding, he is hardly in a position to say that he was under duress because the defendant demanded what both at the time believed to be his legal fees as one of the conditions precedent to making a reassignment of the property. That the defendant was called upon to close up the matter within a reasonable time is no doubt true, but there was no reason why he should reassign the property within a few days of the compromise agreement, and particularly when he had not discharged all of the duties incumbent upon him under the law. It was but the exercise of ordinary

prudence on his part to insist that he should be released from all responsibility in the matter, if he was to surrender the trust, without going through with the usual proceedings; and the plaintiff having been spared the expensive delay which must otherwise have been involved, he is in a poor position to ask a court of equity to permit him to disregard his own agreement, and to subject the defendant, who appears to have acted in the utmost good faith throughout, to the trouble and expense of making an accounting. This case does not come within the rule laid down in that class of cases where persons in a fiduciary or confidential relation take advantage of those under their influence or control; nor are we able to discover any of the elements of duress in the transaction. But, beyond this, the plaintiff was given a statement of the account of the assignee in which the amount paid as fees was charged to his account, and he ratified this statement of account by accepting payment of the balance due him, and by giving his receipt in full for all claims; and, while this transaction was with Dunham, Buckley & Co., this firm was acting in behalf of the assignee, and it shows the evident bad faith of the plaintiff in now seeking to have the judgment reversed that he may follow the assignee with further litigation.

All of the considerations of equity and justice will be best served by affirming the judgment, with costs. All concur.