(112 App. Div. 625)

### MEYER v. PAGE et al.

(Supreme Court, Appellate Division, First Department. April 20, 1906.)

1. ABATEMENT—BANKRUPTCY OF BENEFICIAL PLAINTIFF.

Right to maintain an action by a stockholder for an accounting for the benefit of the corporation is not affected by the corporation becoming bankrupt after commencement of the action; the only effect thereof being that any accounting must be to the trustee in bankruptcy.

2. CORPORATIONS—RIGHT OF ACTION.

J. and T., the members of a firm having credit because of the financial standing of J., formed a corporation, which took over the business of the firm. After the retirement of J. from connection with the corporation, other than that he continued to be a large creditor and stockholder thereof, T. became its president, and unknown to J. raised money for it by discounting the note of the firm, which was afterwards paid by J. On learning of such loan of credit, J. required the corporation to make a payment to him in goods of the corporation, of about the amount of the firm note. Immediately thereafter, the corporation made an assignment. Thereupon T. went to M. and S., who with J. were the large creditors of the corporation, and proposed that such three creditors pay the other creditors, and become the owners of the business in proportion to their claims. M. and S. consented, and executed powers of attorney to J. to arrange the matter as seemed best for their interests. J. had enough goods of the corporation sold to pay the other creditors, took over the balance in satisfaction of the claims of himself, M., and S., and had a new corporation formed, to which such goods were transferred in consideration of its stock and bonds, which he distributed to himself, M., and S., all retaining them. *Held*, that any causes of action because of the payment to J. before the assignment of the old corporation, or because of misrepresentations or concealments to or from M. and S. by J., or by T., as his agent, as to such payment, or as to the amount of J.'s claim, or as to the value of the goods exceeding the claims against the old corporation, or because of an inequitable distribution of the stock and bonds of the new corporation, belonged either to the old corporation or to M. and S. individually, and not to the new corporation.

3. JUDGMENT—INCONSISTENT THEORIES.

A judgment proceeding on the inconsistent theories that one agreed to turn over to a corporation for its stock and bonds all the property that another corporation had, and that he falsely represented that property he was turning over to it in exchange for its stock and bonds was of the par value of such stock and bonds, cannot be sustained.

Houghton, J., dissenting.

Appeal from Special Term, New York County.

Action by Frederich Wilhelm Meyer, suing on his own behalf and on behalf of all other stock and bondholders of the New York China, Glass & Toy Company, in like case against Albion L. Page, ancillary executor of John M. Young, deceased, and others. From the judgment, defendants appeal. Reversed, and new trial ordered.

Appeal by defendants Albion L. Page, as ancillary executor of the estate of John M. Young, deceased, and William R. Baird, individually and as assignee of the J. M. Young Importing Company, James W. Snedden, Thomas Young, and Stephen S. Tallman, from an interlocutory judgment of the Supreme Court, entered pursuant to a decision on the trial of the issues at Special Term, directing that the defendant Page, as ancillary executor, account to the defendant Upson, as trustee in bankruptcy of the New York China, Glass & Toy Company, for the sum of $30,000, received from said importing company, with interest, and render an account of the indebtedness of said importing company to said John M. Young, as therein directed; that all of the appel-

lants account to said trustee in bankruptcy, as therein prescribed, for the stock and bonds of the New York China, Glass & Toy Company issued to said John M. Young; that the defendant Baird, individually and as assignee, account for moneys retained by him as commissions in excess of commissions on cash received and paid out; that the defendant Page, as such executor, and the defendant Baird, individually and as assignee, account to the trustee in bankruptcy for book accounts of said importing company assigned to the assignee and by him sold to the decedent Young; that Page, as executor, and defendants Young and Baird, account to the trustee for the difference between the value of the assets with which the New York China, Glass & Toy Company began business and $140,000, that being the valuation at which said assets were turned over by the assignee to the decedent Young, and by him to said last-named company, together with interest thereon, and appointing a referee to take and state the several accounts, and directing that on the accounting the burden shall be on the defendants other than the defendant Upson, as trustee, and that the plaintiff and the defendant Upson, as trustee, have final judgment on the coming in of the report of the referee in accordance therewith, and for costs and an additional allowance, to be fixed by the final judgment.

Argued before O'BRIEN, P. J., and INGRAHAM, McLAUGHLIN, LAUGHLIN, and HOUGHTON, JJ.

Alfred B. Cruikshank, for appellants.

Alfred E. Hinrichs, for respondent.

LAUGHLIN, J. The plaintiff brought this action as a stockholder and bondholder of the New York China, Glass & Toy Company, in behalf of himself and all other stockholders and bondholders similarly situated who might come in and share in the expense thereof. After the trial, but before judgment, the defendant John M. Young died, and his ancillary executor was substituted in his place. The New York China, Glass & Toy Company was incorporated on the 1st day of April, 1897. This action was commenced on the 27th day of November, 1899, and thereafter, and in the month of February, 1900, the New York China, Glass & Toy Company was adjudged a bankrupt, and the defendant Upson was appointed trustee in bankruptcy. He was joined as a defendant by the order of the court on the 22d day of March, 1901.

The right to maintain the action was not affected by the bankruptcy of the corporation of which the plaintiff is a stockholder. The only practical effect on this action of the bankruptcy is that the accounting, if any, must be to the trustee in bankruptcy, instead of to the corporation, as originally prayed for in the complaint. The John M. Young Importing Company was a corporation organized under the laws of West Virginia on the 30th day of June, 1891, but its business was conducted at Nos. 37 and 39 Murray street, in the city of New York. The purpose of its organization, evidently, was to succeed to a business established in 1866, and carried on by the copartnership firm of John M. Young & Co., composed of said John M. Young, deceased, and his brother, Thomas Young, the defendant, and they owned most, but not all, of the stock. For brevity the copartnership firm will be referred to as the "firm," the importing company will be referred to as the "old corporation," and the New York China, Glass & Toy Company will be referred to as the "new corporation."

The firm had attained a high standing and excellence of reputation as to business methods and the character of its members and for financial

credit. It did not dissolve on the organization of the old corporation, but continued in existence and to some extent in business. It had substantial credit, principally owing to the financial responsibility of John M. Young, the senior member, and it loaned its credit freely to the old corporation. After 1894 the firm practically ceased active business, and the old corporation had taken its place in that regard. John M. Young became the president and a director of the old corporation, and so continued until the 1st day of January, 1897, when he was not re-elected a director, and was succeeded as president by his brother, Thomas Young, who was the principal stockholder. John M. Young was then 60 years of age. After he ceased to be president, his only connection with the old corporation was that of a stockholder and creditor. He was in poor health, and went to California about the middle of January, and remained there until the last of February, 1897. The plaintiff had known the firm since 1880 and the old corporation since its existence. He had been engaged in the forwarding and banking business at Bremen, Germany, since 1888. In 1895 he solicited business with the old corporation, and, pursuant to his letter of solicitation, met Thomas Young at Leipzig, and arranged to give the old corporation credit to the extent of 80,000 marks for the payment of purchases in Germany and Austria, by having drafts drawn upon him for the purchase price of goods purchased by it. The old corporation used the whole amount of the credit that year, and settled the indebtedness the next spring. He again gave it credit, which it used, for the same amount in 1896, and it owed him a balance of a little less than $20,000 when it failed and made an assignment to the defendant Baird on the 4th day of March, 1897. The plaintiff never met John M. Young until after the events of which he complains in this action. When John M. Young retired, he was a creditor of the old corporation to the extent of about $67,000, for which he held its demand notes, besides a claim for back salary. It also owed one Schroeder, a foreigner, about $50,000 at the time it failed. At the time of the failure John M. Young, Schroeder, and the plaintiff were the principal creditors. The other obligations of the old corporation aggregated less than $20,000. During the absence of John M. Young, the foreign creditors were pressing their claims, and received payments; the principal payment being made to Schroeder. These payments somewhat embarrassed the old corporation, and Thomas Young, without authority from his brother, issued notes of the firm for about $36,000, which were discounted at a bank or through brokers, and the proceeds were loaned to the old corporation, which then or on the return of John M. Young issued notes to his order, payable on demand, for the amount thus loaned. These notes, issued by Thomas Young in the name of the firm, the proceeds of which were loaned to the old corporation, did not fall due until after the failure, and they were then paid by John M. Young. John M. Young, on returning from California, and learning that his brother had raised money on the firm notes and loaned it to the old corporation, demanded that it be repaid. His demand was not complied with. He was a nonresident, and being advised that for that reason he could not obtain an attachment, and being desirous of forcing prompt repayment of the money, with a view to reducing his credit to the old corpora-

tion to about the amount as it stood before he went to California, he assigned a demand note or notes, apparently not received for this particular loan, for $27,000, which he held against the old corporation, to one Brown, who brought suit thereon. The old corporation then, with a view to settling the litigation, suggested that John M. Young buy goods of it at cost price and pay cash, which it in turn would pay over to Brown or to him to apply on the indebtedness. He raised what money he could, and induced a friend to do likewise, and they together purchased of the old corporation goods of the value of $30,000 or $31,000 on this basis, paying therefor in cash, and the money was applied on the indebtedness on the 2d and 3d days of March, 1897. The merchandise thus received in part payment of John M. Young's claim against the old corporation was subsequently turned over to the new corporation at the same valuation and 6 per cent. interest on the same. On the 4th of March, as already stated, the old corporation made an assignment, without preferences, to the defendant Baird.

The theories upon which it is sought to maintain this action, as disclosed by the complaint, by the evidence, and by the interlocutory judgment, are conflicting and in some aspects not very clear. It is manifest, however, that the principal complaint is concerning the conduct of John M. Young in forcing the old corporation to make the payment of $30,000 or $31,000 on account of the unauthorized loan made to it in his absence. If there was any irregularity or illegality in that transaction, it is evident that his liability therefor was to the old corporation or its assignee, and not to the new corporation, in behalf of which this action was brought, and yet his ancillary executor has been directed to account herein for the amount of that repayment. Two days after the assignment of the old corporation, Thomas Young sailed for Europe, and had an interview on the 16th of March with the plaintiff, and also about the same time with Schroeder. He informed them of the assignment, but represented that it had been forced by threatened attachment proceedings as the only means of securing equality of distribution among the creditors, but did not say that it was at the instance of his brother, and he also represented that the assets exceeded the liabilities by $43,000. He proposed that the creditors, other than his brother, Schroeder, and the plaintiff, be paid in full, and that these three principal creditors take stock of the old corporation for the amount of their respective claims, and that the outstanding stock be canceled, and the business continued. This proposition was accepted by them, and they executed powers of attorney to John M. Young, authorizing him to represent them in the settlement of the affairs of the company, and "to receive and receipt for the sum due thereon, or to otherwise arrange the matter as may seem to him best for my interests." Certificates of stock in the old corporation, which had already made the assignment, were issued to the plaintiff by Thomas Young, at the time the arrangement was made in Europe, to the amount due him, as then ascertained. It was understood that this arrangement was "tentative." This was treasury stock. It was signed by the treasurer and president, but, so far as appears, without authority of the board of directors. Upon his return Thomas Young delivered the powers of attorney to his brother, as authorized by plaintiff and Schroeder, who

immediately undertook to represent them, as well as himself. The new corporation was organized under the laws of New York to take over the assets of the old corporation, and it continued the business until it went into bankruptcy. The capital stock of the new corporation was fixed at $100,000, half preferred and half common, and an issue of $40,000 bonds of the new corporation was authorized. The Trial Court found that the assignee fixed the value of the assets of the old corporation, above those necessary to pay the other debts and charges of administration, arbitrarily at $140,000; but the evidence shows that it was fixed at the cost price of the goods according to the tickets thereon, which included the invoice prices plus the duty, freight, and brokerage charges, and 3 per cent. added for breakage. Goods of the old corporation, the price of which was estimated on this basis to be $121,187.-47, and shelving, furniture, and fixtures of the estimated value of $2,-642.53, current accounts of the estimated value of $13,255, fireworks of the estimated value of $115, aggregating $137,200, and $2,800, in cash, making, in all, $140,000, were sold by the assignee on the basis of these figures to John M. Young, who by two bills of sale sold and assigned the same to the new corporation at the same valuation. This exhausted nearly all the assets of the old corporation. The property reserved from this sale will be referred to presently. John M. Young in this transaction was acting for himself, for the plaintiff, and Schroeder, and he executed a receipt to the assignee for himself and as attorney in fact for them for the property thus transferred. In consideration for the transfer of this property and money to the new corporation, John M. Young received for himself, for the plaintiff, and for Schroeder the entire issue of $100,000 capital stock and $40,000 of bonds. He then apportioned this stock and the bonds between himself and them, according to their respective claims against the old corporation as adjusted by him and the assignee. He surrendered the stock of the old corporation to the assignee, transmitted to the plaintiff and to Schroeder, pursuant to an arrangement made with them by his brother, Thomas, on a second trip to Europe, their respective proportions of the stock and bonds of the new corporation, stating in his letters that it was in full settlement of their claims against the old corporation, and they accepted and retained the stock and bonds without protest, and have never rescinded the transaction. The assignee did not file an account, and the reason he assigns for not doing so is that the good will of the business and its contracts had passed to the new corporation, the officers of which thought that the good will would be affected or destroyed and that business rivals would be given an advantage by a public accounting. The assets of the old corporation in the hands of the assignee not transferred to the new corporation were sold and converted into cash through John M. Young, and the proceeds used in paying off the other creditors and the assignee's commissions. The balance remaining was divided between the plaintiff, Schroeder, and John M. Young in the adjustment of their respective claims; some additional stock and bonds of the new corporation being issued to John M. Young for part of his claim.

Complaint is made that plaintiff and Schroeder were not informed by Thomas Young of the payment of the $30,000 or $31,000 to John

M. Young shortly before the assignment, or that the assignment had been precipitated by his assigning the note, and having suit pressed thereon, and that Thomas Young represented to them that the assets of the old corporation exceeded its debts by $43,000. It is also claimed, and has been found by the court, that the notes of the old corporation were given to John M. Young to indemnify him against liability on the notes of the firm, the proceeds of'which were loaned to the old corporation; but this finding is not sustained by the evidence. The evidence clearly shows that the only persons interested in the firm were John M. Young and Thomas Young; that the old corporation had the proceeds of the firm notes in cash, and was not liable, as indorser or otherwise, on the firm notes, and that the only notes or obligations by the old corporation for the money thus loaned were the demand notes payable to the order of John M. Young, and that they were issued with the full assent and approval of Thomas Young, if not by his direction. The old corporation, therefore, was liable to John M. Young, and to him only, for the money loaned by the firm, and he owned the notes, and had a perfect right to enforce payment thereof.

There is little evidence to sustain the contention that Thomas Young was the agent of his brother in the negotiations with the plaintiff and Schroeder in Europe which resulted in the new plan and in the execution of their respective powers of attorney. Moreover, the failure of Thomas Young to inform them concerning the payment of $30,-000 or $31,000 is not material to any issue in this case. If they had been informed of the facts concerning that transaction, upon the evidence here presented, there is nothing of which they could justly complain in this action at least. The old corporation had the benefit of this money, and a large part of it, or the money which it was needed to replace, was paid to Schroeder, reducing his claim. The old corporation had received the money without authority from John M. Young, and the notes of the firm had been negotiated upon his credit, and, as already seen, he subsequently paid them. He was perfectly justified in insisting that the money thus loaned should be promptly repaid, or that the amount of his claim against the new corporation should be reduced to the amount of credit which he had authorized. No creditor even of the old corporation could, I think, justly complain of this transaction. But, as already observed, it is difficult to perceive upon what theory the new corporation, which through the plaintiff is proceeding in affirmance of the sale of the property to it, can question any settlement made by the old company with its creditors.

So far as the present action is concerned, the plaintiff and Schroeder ratified the acts of John M. Young as their attorney in accepting and retaining the bonds and stock of the new corporation. If he violated his duty to them as their attorney in fact, they might individually seek redress from him or his estate. If he received more than his due proportion of the stock or bonds, the stock or bonds in his hands might be impressed with a trust for their benefit. If he received assets from the assignee which were not turned over to the new corporation, or used in paying the debts of the old company, he and the assignee are doubtless liable therefor in some form of action or proceeding; but whether there be any liability to account in this action, not to the creditors or

stockholders of the old corporation, or to plaintiff and Schroeder individually, but to the new corporation, must depend upon the agreement made with it.   The plaintiff and Schroeder may have an action for damages against Thomas Young and the estate of his brother, if Thomas was his agent, for fraudulent concealment of material facts, which if disclosed would have led them to refrain from issuing the powers of attorney and accepting the stock and bonds of the new corporation in settlement of their claims against the old corporation. But this action is solely in the right of the new corporation. It cannot rescind the transaction between plaintiff and Schroeder and the old corporation, and have a complete accounting. Its rights are such only as it derived under the contract by which it obtained the major part of the property of the old corporation. This action being solely in the right of the corporation, and not in behalf of creditors thereof, it is not entirely clear that any accounting may be had for anything to which the new corporation was not entitled under the agreement made with it by John M. Young, representing himself and the plaintiff and Schroeder, they being the only persons interested therein; but that question need not now be decided. If there was an agreement by which the new corporation was to receive all of the assets of the old corporation, less the amount necessary to pay the other creditors and the assignee's commissions, doubtless the assignee and the estate of John M. Young would be liable to account in this action therefor. But the plaintiff must adopt one theory or the other. If John M. Young deceived the new corporation with respect to the value of the property turned over to it in exchange for its stock and bonds, doubtless his estate would be liable in this action; but upon such theory of the case it would become entirely immaterial whether he turned over all of the assets of the old company, and the inquiry would be limited to the question as to whether the property turned over was equivalent in value to the par value of the stock and bonds received in return.

Complaint is made that the assignee deducted commissions on the value of the property not converted into cash, but sold by him to John M. Young and in turn to the new corporation. It is not at all clear on the facts here presented that the assignee would not be entitled to commissions on the value of that property. McCann v. O'Brien, 40 App. Div. 193, 57 N. Y. Supp. 897. The commissions were agreed upon by Young representing all the persons who were to be interested in the new corporation, and upon the strength of that agreement the assignee, instead of selling the property, as he would otherwise have had the right to do, in which event it is clear he would have been entitled to his commissions, surrendered the property to Young.

Complaint is also made that the plaintiff and Schroeder were deceived with respect to the amount of John M. Young's claim against the old company. The amount of his claim was represented to be $67,-000. It was understood at the time that the claims of Young, Schroeder, and the plaintiff against the old company, or some of them, might vary somewhat from the figures before the parties; and the claims of each, as finally adjusted, did vary from those figures. The increase of Young's claim over the amount it was represented to them to be consisted in a claim for back salary, which the evidence tends to show

was owing to him, and for a small amount of moneys advanced. He adjusted the amount of his claim and the amount of their claims with the assignee. There is nothing in this record but mere suspicion to indicate that the adjustment was not fair and honest; in any event, it is not clear that it can be inquired into in this action. The allowance of claims by the assignee could be reviewed on his accounting, but the plaintiff was not a stockholder of the old company, and, having accepted the settlement, it may be that neither he nor Schroeder is now in a position even to call the assignee to account.

The interlocutory judgment proceeds on the theory of fraud. We have carefully considered all of the evidence, and are of opinion that the evidence does not warrant the findings of the learned trial judge in this regard, and, as before observed, that the interlocutory judgment requires accountings as to matters that cannot be reached in this action, and proceeds upon conflicting theories, and cannot be sustained. The principal inconsistencies are that, in addition to requiring that the difference between the actual value of the property received by the new corporation and $140,000, being the par value of the stock and bonds issued therefor, be now paid over, with interest, which alone would make the new corporation, in whose right this action is brought, whole, it requires that the $30,000 or $31,000 be also paid over to the new corporation, and also that all of the other assets of the old corporation be accounted for to the new corporation or its trustee.

It follows, therefore, that the interlocutory judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, P. J., and INGRAHAM and McLAUGHLIN, JJ., concur. HOUGHTON, J., dissents.