ALICE E. FLEMING *vs.* WILLIAM COURTENAY, Admr.

Lincoln.    Opinion December 31, 1903.

*Bankruptcy. Bankrupt Act,* March 2, 1867. *Assignee,* What passes to him,—and
what remains in bankrupt. Right to reject onerous property. *Practice.*
*Amendment,* Substitution of new plaintiff not allowable.

All assets and estate of a bankrupt, not exempt, whether mentioned in the
bankrupt's schedules or not, pass to an assignee in bankruptcy; but an
assignee may refuse to take possession of onerous properties or such as
will be burdensome rather than profitable to the estate, subject undoubt-
edly to the control of the bankruptcy court.

An assignee in bankruptcy is required to elect within a reasonable time
whether or not he will take any particular property of the estate, and if
within such reasonable time he does not elect to take the particular prop-
erty, it is deemed an election to reject.

When he elects to reject, or when it must be presumed that such has been
his election, title to the asset, whatever it is, remains in the bankrupt.

*Held;* that the forbearance upon the part of the assignee to claim the asset
here in question during the time that he was assignee and for twenty-two
years thereafter, in connection with the other acts stated in the opinion
show a deliberate intention upon his part to reject this particular asset of
the bankrupt's estate.

*Also;* that the action of the District Court sitting in bankruptcy in making
the decree of sale under which the plaintiff claims title to cannot be re-
garded as an adjudication to the contrary, since no reference was made
to this claim in the petition for license to sell or to any circumstances in
regard to it; and the court had no means of knowing that the assignee
sought authority to sell an asset which he had repudiated twenty-two
years before, and since, no notice having been given upon the petition,
there could have been no adjudication of this question.

There is no more identity between a person suing as executor upon a cause
of action accruing to his estate, and the same person suing in his individ-
ual capacity upon a cause of action accruing to himself, than there is
between two entirely different persons. To allow the plaintiff to amend
her writ by suing as executrix of the bankrupt, and by declaring upon a
cause of action accruing to the estate, would be to allow the substitution
of a new plaintiff in the place of the single plaintiff who brought the suit.
This is not allowed by the statutes of this State in relation to amendments.

See *Fleming* v. *Courtenay,* 95 Maine, 128,

On report.   Judgment for defendant.

This was an action of debt, begun July 1, 1899, and tried in the Supreme Judicial Court for Lincoln County in the October term, 1902, and reported by the justice presiding to this court for determination upon so much of the evidence as was legally admissible; this court to have jury powers and to determine questions of fact and to render final judgment.

The facts are stated in the opinion.

*O. D. Castner, Harvey N. Shepard and Enoch Foster,* for plaintiff.

The claim of Mr. Lawrence against the United States, though not suable in ordinary course of justice, was a right assignable to Mr. Maynard, even before the United States had taken any steps towards securing to the former compensation for his loss. *Blaauwpot* v. *Da Costa,* 1 Eden, 130; *Randall* v. *Cockran,* 1 Ves. Sen. 98. The claim of Mr. Maynard against Mr. Lawrence, though contingent upon recovery from the United States, passed upon the bankruptcy of Mr. Maynard to his assignee, Mr. Weston. *Hunter* v. *U. S.* 5 Peters, 175; *Milnor* v. *Metz,* 16 Peters, 221; *Erwin* v. *U. S.* 97 U. S. 392. Whatever an administrator would take in case of intestacy will pass to an assignee in bankruptcy. *Williams* v. *Heard,* 140 U. S. 529. Claims founded on contract pass by assignment regardless of whether payment can be enforced. *Phelps* v. *McDonald,* 99 U. S. 298. As an assignment is required to be made in all cases as a matter of course, the courts in a collateral action will assume that assignment has been made. *Swepson* v. *Rouse,* 65 N. C. 34. If the right of the assignee to sue is not put in issue by any of the pleas, it is not incumbent to prove the assignment. *Zentzinger* v. *Ribble,* 36 Md. 32. If a party permits the transcript from the records of the bankrupt court to establish the presumption of the execution of an assignment, without an objection as to the non-production of the deed, he cannot raise that question for the first time in the appellate court. *Crayton* v. *Hamilton,* 37 Tex. 269. The appointment of an assignee may be established by proof that he acted as assignee, without producing the record of his appointment, in a controversy between the purchaser and third

parties.   *Arnold* v. *Leonard*, 20 Miss. 258.   Thereafter Mr. May-
nard had no control or power of disposition over the claim.   *Brig-*
*ham* v. *Home L. Ins. Co.*, 131 Mass. 319.   Thereafter any suit upon
this claim must be by the assignee and could not be by Mr.
Maynard.   *Hall* v. *McPherson*, 3 Bland (Md.) 529; *Young* v. *Will-*
*ing*, 2 Dall. 276.   The right of action vested in Mr. Weston,
although the breach of the contract did not occur until after the
bankruptcy.   *Gibson* v. *Carruthers*, 8 M. & W. 321.   And even
though the property or claim was not scheduled with the other
assets.   *Planters' Bank* v. *Conger*, 12 Smed. & M. (Miss.) 527;
*Holbrook* v. *Coney*, 25 Ill. 447; *Goreley* v. *Butler*, 147 Mass. 8, is
an interesting and important decision in point.

The adjudication of the Court of Claims does not decide the legal
and equitable ownership of the money; it only decides upon the
amount and validity of the claim as against the United States, sets
apart and identifies the fund for the benefit of whoever ultimately
may prove entitled to it, and leaves the rights of all persons claim-
ing to be entitled to the sum awarded to the ordinary course of pro-
ceedings in the established courts.   Such rights pass to an assignee
in bankruptcy or insolvency under an assignment earlier in date
than the act providing for the payment of the claim.   *Heard* v.
*Sturgis*, 146 Mass. 552; *Comegys* v. *Vasse*, 1 Peters, 193:   One-
half the money when paid by the United States belonged to Mr.
Maynard previous to his bankruptcy and to Mr. Weston subse-
quently thereto, and to the plaintiff after the sale to her, although
the Act of Congress and the judgment of the Court of Claims are
subsequent to the bankruptcy.   *Leonard* v. *Nye*, 125 Mass. 455.
The conveyance by Mr. Weston under a decree of court to the
plaintiff is valid.   *Wilson* v. *Winslow*, 145 Mass. 339.   A sale of
all the bankrupt's right of property gives the purchaser all the
rights of action which the assignee could exercise in respect of such
property.   *Williams* v. *Vermeule*, 4 Sandf. Ch. 388.   The sale of
the property by the assignee for a nominal consideration is an objec-
tion that cannot be raised in an action by the purchaser to recover
the property.   *Stevens* v. *Hauser*, 30 N. Y. 302.   The purchaser
of a chose in action from the assignee may sue in his own name.

*Mims* v. *Swarz,* 37 Tex. 17. The money awarded by the Court of Claims is capable of passing by an assignment from Mr. Lawrence in any form recognized by law, though made before the award. *Bachman* v. *Lawson,* 109 U. S. 659.

*Robert Cushman and J. E. Moore,* for defendant.

(1). The contract of Dec. 12, 1865, in suit, does not apply to or cover the judgment of the Court of Claims based on the Act of Congress of Oct. 1, 1890, for the relief of the administratrix of the estate of George W. Lawrence. *Moran* v. *Prather,* 23 Wall. 50; *Shore* v. *Wilson,* 9 Cl. & F. 555; *Reed* v. *Merchants' Mutual Insurance Company,* 95 U. S. 23; *Charter* v. *Charter,* L. R. 7 H. L. 364; *Stringer* v. *Gardner,* 4 De G. & J. 468; *Munsell* v. *Lewis,* 4 Hill, 635; *Kingsbury* v. *Mattocks,* 81 Maine, 317; *Heard* v. *Sturgis,* 146 Mass. 545; *Dockery* v. *U. S.* 26 Ct. Cl. 148; *Emerson* v. *Hall,* 13 Pet. 409. (2). The contract in suit is void under the United States statutes (10 Stat. 170). *Spofford* v. *Kirk,* 97 U. S. 484; *Hobbs* v. *McLean,* 117 U. S. 567; *Ball* v. *Halsell,* 161 U. S. 72; *United States* v. *Gillis,* 95 U. S. 407; *Erwin* v. *United States,* 97 U. S. 392; *Goodman* v. *Niblack,* 102 U. S. 560; *Butler* v. *Goreley,* 146 U. S. 303; *Bailey* v. *U. S.* 109 U. S. 432; *St. Paul and Duluth R. R. Co.* v. *U. S.* 112 U. S. 733; *Flint and Pere Marquette R. R. Co.* v. *U. S.* 112 U. S. 737; *Hobbs* v. *McLean,* 117 U. S. 567. (3). The plaintiff has no title. *Sessions* v. *Romadka,* 145 U. S. 37; *Nash* v. *Simpson,* 78 Maine, 142; *Lancey* v. *Foss,* 88 Maine, 215; *Beall* v. *Dushane,* 140 Pa. St. 439; *Taylor* v. *Irwin,* 20 Fed. Rep. 615; *American File Co.* v. *Garrett,* 110 U. S. 288; *Sparhawk* v. *Yerkes,* 142 U. S. 1; *Dushane* v. *Beall,* 161 U. S. 515, 516; *Streeter* v. *Sumner,* 31 N. H. 559; *Smith* v. *Gordon,* 6 Law Rep. 313, Fed. Cases, No. 13052; *Reynolds* v. *Crawfordsville,* 112 U. S. 405; *Glenny* v. *Langdon,* 98 U. S. 20, 31; *Laughlin* v. *C. & C. Canal & Dock Co.,* 65 Fed. Rep. 441; *Amory* v. *Lawrence,* 3 Cliff. 523; *Page* v. *Waring,* 76 N. Y. 463; *South Staffordshire Ry. Co.* v. *Burnside,* 5 Ex. 129; *Ex parte Davis,* 3 Ch. Div. 463; *Dewey* v. *Moyer,* 16 N. B. R. 1; *Frazier* v. *Desha's Admr.,* 40 So. W. Rep. 678; *Colie* v. *Jamison,* 13 N. B. R. 1; *In re Hoyt,* 3 N. B. R. 55; *Ferguson* v. *Dent,* 24 Fed. Rep. 414; *Boyd* v. *Olvey,* 82 Ind. 294;

*King* v. *Remington*, 36 Minn. 15; *Page* v. *Waring*, 76 N. Y. 463; *Jones* v. *Pyron*, 57 Tex. 43; *Herndon* v. *Davenport*, 75 Tex. 462; *Burton* v. *Perry*, 146 Ill. 71; *Steevens* v. *Earles*, 25 Mich. 40; *Peery* v. *Carnes*, 86 Mo. 562; *King* v. *Remington*, 36 Minn. 32; *Conner* v. *Southern Express Co.*, 9 N. B. R. 138; *Sessions* v. *Romadka*, 145 U. S. 37; Dicey on Parties, p. 221, rule 40. (4). Alice E. Fleming is not the proper party plaintiff. Co. Litt. 214a, 266a; *Carleton* v. *Bird*, 94 Maine, 182; *Rogers* v. *Union Stone Co.*, 134 Mass. 31; *Leach* v. *Greene*, 116 Mass. 534; *Hay* v. *Green*, 12 Cush. 282; *Lancaster* v. *Knickerbocker Ice Co.*, 153 Pa. St. 427.

SITTING: WISWELL, C. J. WHITEHOUSE, STROUT, SAVAGE, POWERS, SPEAR, JJ.

WISWELL, C. J. On November 3, 1863, George W. Lawrence, of whose estate the defendant is administrator de bonis non, entered into a contract with the United States government to construct, according to plans and specifications, an iron clad steam battery or monitor, afterwards called the "Wassuc." The contract price was $386,000, but it was stipulated in the contract that the government might at any time during the progress of the work make such alterations and additions to the plans and specifications as might be deemed necessary or advisable, and should pay therefor a fair and reasonable rate.

Upon the same day of this contract with the government, Lawrence made a contract with James A. Maynard, now deceased, and under whom the plaintiff claims by virtue of an assignment from his assignee in bankruptcy, which title will be later referred to, whereby the parties to this last contract agreed to jointly construct this monitor according to the plans and specifications to be furnished by the government. Provisions were made in this contract in relation to the services to be performed by each of the parties and as to the compensation of each therefor and for a division of the profits of the enterprise, which are not now important because of a subsequent contract in relation to a settlement between the parties of all matters growing out of the construction of this monitor.

The construction of the vessel was very much delayed, for various reasons, but it was finally completed, delivered to, and accepted, by the government on Oct. 4, 1865. This delay was at least partially caused by the changes in and additions to the plans and specifications made by the government, for which large extra compensation was claimed and received.

On Dec. 9, 1865, an informal agreement of settlement was made between these parties, but this became superseded by a formal agreement under seal made between them on December 12, 1865, whereby Lawrence was to immediately pay Maynard the sum of eight thousand dollars in cash; it provided for a division of tools and materials between them; Lawrence was to pay all indebtedness incurred by them in the construction; the contract also contained this clause: "And the said Lawrence further agrees to pay to the said Maynard one-half of whatever sum he may receive from the United States on final settlement for said monitor, over and beyond the sum of five hundred & forty-six thousand dollars, including all sums already received."

By a letter dated May 1, 1867, Lawrence informed Maynard that he had at that time received on the contract the sum of $543,721.79, and for gun carriages $3500, making a total of $547,221.79, from which he claimed that there should be deducted his personal expenses and other expenses incurred in obtaining the latter payments, amounting to $1148 leaving a balance of $546,073.79. It is claimed that through some inadvertence the sum stated to have been received for the gun carriages was $100 in excess of the sum actually received, and that consequently Maynard at that time was not entitled to receive anything from Lawrence, if it were proper to deduct the expenses incurred, or, if the expenses should not be deducted that he was at that time only entitled to receive, at most, one-half of $1121.79, the excess over the sum stated in the clause of the contract quoted. Upon the part of the plaintiff claim is made that Lawrence had in fact at that time received a larger amount than reported, but in view of our conclusion it is unnecessary to consider these contentions.

Lawrence died November 18, 1887, and his widow, Thankful M.

Lawrence, was appointed administratrix of his estate in the month of December following. The administratrix subsequently applied to Congress for relief and for additional compensation for the construction of this monitor. After many disappointments and the failure of both houses to pass a bill for her relief during the same Congress, both houses finally concurred in the passage of an act, approved October 1, 1890, wherein it was provided that "the claims of George W. Lawrence for further compensation for the construction of the United States monitor 'Wassuc' might be submitted to the Court of Claims."

In pursuance of this Act of Congress the administratrix, on October 24, 1890, filed in the Court of Claims of the United States her petition to be allowed additional compensation for the construction of the monitor, which, she claimed in her petition, the estate was entitled to by reason of the many changes made by the government in the plans and specifications, the failure of the officials of the department to seasonably furnish such plans and specifications as they were required, and on account of other delays caused by the department officials.

While her claim was pending before Congress the administratrix made a contract with one McKay, wherein she agreed to give him the exclusive control of the prosecution of this claim before Congress or in the courts, and to pay him as compensation for his services fifty per cent of all sums collected. While the claim was pending in the Court of Claims a new agreement was made whereby his compensation was increased to sixty per centum.

On February 15, 1897, the Court of Claims filed an opinion in the case and ordered judgment for the claimant for the sum of $36,385.08, and on July 23, 1897, two treasury warrants, one for $14,554.04 and the other for $21,831.04, were issued, both payable to the order of the defendant as administrator de bonis non of George W. Lawrence, deceased, the administratrix having resigned and the defendant having been appointed in the meantime. It will be noticed that the smaller of these warrants was for forty per cent, and the larger for sixty per cent of the judgment of the Court of Claims, the two aggregating the amount of the judgment. The smaller of these two warrants was collected by the defendant, while the larger

was indorsed over to McKay in accordance with the agreement that he should receive sixty per cent of the amount collected as compensation for his services.

This action is to recover of the estate of Lawrence one-half of the whole amount received by him in his lifetime and of the amount awarded to his estate by the Court of Claims, in excess of $546,000 under the agreement of settlement of December 12, 1865.

A great many objections are urged against the maintenance of this suit, some of which go to the merits of the cause, while others are more or less technical in their nature. As we feel constrained to decide that for one reason, at least, the action cannot be maintained, it is unnecessary to consider the numerous objections to the maintenance of the action, other than the one, which, we think, must be sustained.

This is as to the title of the plaintiff to the claim in suit and her right to maintain this action. In relation to this question the following facts are important: Upon May 19, 1876, James A. Maynard then of Newton, Massachusetts, was adjudged a bankrupt by the United States District Court, for the District of Massachusetts, upon his voluntary petition; on June 10, 1876, Thomas Weston, Jr., of Newton, Massachusetts, was appointed assignee and on the 13th of that month accepted the trust; on December 5, 1876, the bankrupt petitioned for his discharge, stating in his petition "that no assets had come into the hands of the assignee;" one creditor only proved his claim and that was for a sum less than twenty dollars." On December 30, 1876, the assignee presented his account for settlement, showing some small disbursements for officers' fees and for the publication of notices, and also showing that he had received "no assets or property of any kind." This was accompanied with a petition asking for the allowance of such account, in which he says, "that as such assignee he has conducted the settlement of the said estate."

Upon this petition the assignee's account was examined, found correct and allowed, and it was ordered, "that the said assignee be discharged according to the provisions of the twenty-eighth section of the Bankrupt Act of March 2, 1867." On February 2, 1877, the

bankrupt received his discharge. During the proceedings, the date does not appear, the assignee made a declaration that he had been unable to find any assets, goods or credits belonging to the estate, and that none had come to his knowledge or possession.

On June 28, 1899, something over twenty-two years after the estate of Maynard in bankruptcy had been finally closed, and after the bankrupt had received his discharge, and the assignee had presented and settled his final account and had been discharged from the trust, the assignee presented to the District Court of the United States for the District of Massachusetts, a petition setting forth the bankruptcy of Maynard in 1876, and his appointment as assignee, and, saying, "that there were no assets of any value in said estate that came to the possession or knowledge of said assignee or petitioner;" and, "that your petitioner has now been offered by Mrs. Alice E. Fleming of Boston in said District, a daughter of said deceased bankrupt, $100 in cash for all of the assets of every name and nature belonging to the estate of the said James A. Maynard;" and asking that he be authorized by a decree of the court to make sale of all of such assets to the said Alice E. Fleming for the sum of one hundred dollars in cash. Upon the same day, without any notice upon the petition, a decree was filed authorizing Weston to sell and convey to Alice E. Fleming "all of the assets of every name and nature belonging to the estate of the said bankrupt for the sum of one hundred dollars cash, and to make, execute and deliver a proper deed conveying the same to said purchaser." This decree was signed as follows:

"By the Court,

F. S. FISKE, Deputy Clerk."

Upon the same day as the date and filing of the last petition and of the decree thereon, Weston, in pursuance of the decree made a bill of sale or assignment to this plaintiff of "all of the assets of every name and nature belonging to the estate of the said bankrupt."

This is the title under which the plaintiff sues, the action being in her own name, in her individual capacity, and a copy of the bill of sale or assignment having been filed with the writ when the action was entered in court. The question is whether or not under the foregoing circumstances, Weston, on June 28, 1899, at the time

of the transfer and assignment by him to the plaintiff had any title to this claim against the estate of Lawrence, which he could assign to the plaintiff, and upon which she could maintain an action in her own name. We are of the opinion that this admits of only one answer, and that in the negative, and are constrained to hold that this action cannot be maintained.

It is, of course, true that by virtue of the bankruptcy proceedings this unliquidated claim against Lawrence. or his. estate, as well as all other assets and estate of the bankrupt, not exempt, whether mentioned in the bankrupt's schedules or not, passed to the assignee; but it is equally clear and well settled by a long line of decisions of the Federal Courts that an assignee in bankruptcy may refuse to take possession of onerous properties or such as will be a burden instead of a profit. As shown by the deposition of Weston this unliquidated claim, although not mentioned in the bankrupt's schedules, was known to him during the time that he was assignee. He testifies that he talked the matter over with Mr. Maynard, but that there was no money to press the claim and that there seemed to be no occasion for him to do so as there was but one claim proved against the estate, and that very small. Again, he testifies in answer to an interrogatory: "My impression is that I made some inquiries about it (this claim) and found that it would be expensive and be attended with a great deal of trouble and time, and I think that I found out that it would be resisted, and I did not think it was worth while under the circumstances for me to do anything about it. I can't say that I dropped it. That's all that I did."

It is not only well settled, as above stated, that an assignee may refuse to take possession of onerous properties, or such as would be burdensome instead of profitable to the estate, subject undoubtedly to the control of the court, but also that an assignee in such a case is required to elect, within a reasonable time, whether or not he will take any particular property of the estate; and that if within such reasonable time he does not elect to take the property, it is deemed an election to reject it. When he elects to reject, or when it must be presumed that such has been his election, the asset, whatever it is, remains in the bankrupt. This doctrine was early stated in this

country in *Smith* v. *Gordon*, 6 Law Rep. 317—and in *Amory* v. *Lawrence*, 3 Clifford's Reports, 523, and has since been universally followed. In *Dushane* v. *Beall*, 161 U. S. 515, the Chief Justice stated the doctrine in this way: "It is well settled that assignees in bankruptcy are not bound to accept property which, in their judgment, is of an onerous and unprofitable nature, and would burden instead of benefiting the estate; and can elect whether they will accept or not after due consideration and within a reasonable time, while, if their judgment is unwisely exercised, the bankruptcy court is open to compel a different course." And again, in the same case: "If with knowledge of the facts, or being so situated as to be chargeable with such knowledge, an assignee, by definite declaration or distinct action, or forbearance to act, indicates in view of the particular circumstances, his choice not to take certain property, or if, in the language of Ware, J., in *Smith* v. *Gordon*, he, with such knowledge, 'stands by without asserting his claim for a length of time, and allows third persons in the prosecution of their legal rights to acquire an interest in the property,' then he may be held to have waived the assertion of his claim thereto." See also *Nash* v. *Simpson*, 78 Maine, 142, and *Lancey* v. *Foss*, 88 Maine, 215. A further citation of authorities would not be useful.

In this case, although the assignee had information in regard to the existence of this unliquidated claim, for more than twenty-two years he neglected to assert any title thereto. If nothing else appeared, the irresistible inference from his neglect to affirmatively assert his claim, for these many years, would be that he had elected not to accept this asset of the estate, believing it to be burdensome and unprofitable. But much more does appear confirmatory of this inference, if not sufficient to show a definite declaration or distinct action upon his part not to accept the claim. Although having knowledge of its existence he made declaration that he had been unable to find any assets, goods or credits belonging to said estate and that none had come to his knowledge or possession. He filed and settled his final account showing disbursements but no assets or property of any kind. In his petition for the allowance of this account, he states that, "he has conducted the settlement of the said

estate." He allowed the estate to be finally closed and received a discharge from his office of assignee, while this claim was in existence. He testified that he came to the conclusion, after investigation, that it was not worth while to attempt to enforce the claim.

In all of these ways he affirmatively showed an election not to accept this asset of the estate, because it was burdensome and supposed to be unprofitable. Even after the lapse of more than twenty-two years, during which time the bankrupt died and the Bankruptcy Act of 1867, was repealed, when, on the twenty-eighth of June, 1899, he petitioned for leave to sell all of the assets of the estate for the sum of one hundred dollars, he states in that petition, "that he entered upon his duties as such assignee and duly discharged all of the duties of said trust," and again, "that there were no assets of any value in said estate that came to the possession of (or) the knowledge of said assignee or petitioner."

It is not necessary to decide whether or not an assignee in bankruptcy, who has received his discharge as such because the estate has been closed, can, thereafter assert title to a portion of the property of the bankrupt,—and enforce or sell the same. We are unable to perceive how a person, who takes property in a fiduciary capacity can have any such right or title after he has performed the duties of and has been discharged from the trust, and various cases have been cited which hold that after the expiration of his trust he has no such right or title. But, in any event, the fact that an assignee does not assert his right to an asset of a bankrupt estate during the time that he holds the trust and that the estate is closed and he is discharged from the trust without any such assertion on his part, is strong evidence of his election not to accept. So that, in this case, we not only have the forbearance of the assignee to take any action in the assertion of his claim, during the time that he was assignee and for more than twenty-two years afterwards, but we also have the positive acts of the assignee above referred to, which clearly and irresistibly show, in our opinion, a deliberate intention to reject this particular claim belonging to the bankrupt's estate.

We do not think that the action of the District Court of the District of Massachusetts in making the decree referred to, can be

regarded as an adjudication to the contrary. No reference was made in this petition to this claim, or to any circumstances in regard to it, the court had no means of knowing that the assignee sought authority to sell an asset which he had repudiated twenty-two years before, and in fact, the assignee himself apparently was not aware that a claim of this magnitude, or of any value, existed, because in that latter petition he says that there were no assets of any value which came to his possession or knowledge. No notice was given upon this petition, there could have been no adjudication of this question; the petition, the decree and the assignment were all filed and made upon the same day. Neither do we think that it is any answer to this result that in this case, until after the judgment of the Court of Claims, this claim was uncertain and unliquidated. This contingent claim with all of its uncertainties might have been sold by the assignee for what it was worth, or for what it would bring, during the time that he was assignee.

It follows that the title to this claim against the Lawrence estate, which the assignee refused to take, remained in the bankrupt. See the cases above cited. And, upon his death, went to his personal representatives. It is suggested by the counsel for the plaintiff that if the court should decide that the action could not be maintained by the plaintiff in her individual capacity, that she was in fact the executrix of the will of James A. Maynard and that the writ might be amended by making her a party plaintiff in that capacity. Unfortunately this cannot be done. Our statutes in relation to amendments are very liberal and allow the summoning in of additional defendants, or the coming in of additional plaintiffs, and even the striking out of one or more plaintiffs, when there are two or more, but they do not allow the substitution of one party plaintiff or defendant for another. In *Glover Company* v. *Rollins*, 87 Maine, 434, it was decided that the statutes do not authorize the substitution of a new defendant for the only one originally named in the writ. In *Duly* v. *Hogan*, 60 Maine, 355, it was decided that this could not be done indirectly, by first summoning additional defendants, and then discontinuing as to the original defendant. In *Jones* v. *Sutherland*, 73 Maine, 157, 158, it was decided that a writ could not be

amended by inserting the name of a plaintiff when there was no plaintiff named therein before.

There is no more identity between a person suing as executor, upon a cause of action accruing to his estate, and the same person suing in his individual capacity, upon a cause of action accruing to himself, than there is between two entirely different persons. It is true, that in *Bragdon* v. *Harmon*, 69 Maine, 29, where a plaintiff was described in the writ as executor, the court held that an amendment could be allowed by striking out the words "executor, etc."; but the reason of this, as expressly stated in the opinion, was because the cause of action was described as one accruing to the plaintiff in his own right, and consequently the words allowed to be stricken out were simply descriptio personae. That case is no authority for the power of the court to allow an amendment whereby a new plaintiff would be substituted, or even the same person as plaintiff but in an entirely different capacity. In this very case, when it came to the law court before upon exceptions to a ruling on a demurrer to the defendant's plea in abatement, (95 Maine, 128,) it appeared that the plaintiff had joined in the same writ, counts in which the cause of action was alleged as accruing to the estate, and other counts in which the cause of action was alleged as accruing to her individually. It further appeared that she was not executrix at that time. But, inasmuch as the counts alleging that the cause of action accrued to her individually were sufficient, with a slight amendment, she was allowed to amend her writ by striking out the counts alleging that the cause of action accrued to the estate which she represented and by making the slight amendment necessary in the counts declaring upon the cause of action in her own right, upon the authority of *Bragdon* v. *Harmon*, supra. This having been done, the action then became entirely an action in her own name. In *Winch* v. *Hosmer*, 122 Mass. 438, the court, in construing the Massachusetts statutes in relation to amendments, somewhat broader than ours, held that these statutes "permit the substitution of a new plaintiff," but this is contrary to the past and present construction of our statutes upon the subject by this court.

The case having come to the law court upon a report of the

evidence, our decision is, that, upon the foregoing findings of fact, and for the reasons above given, the entry must be,

*Judgment for defendant.*