## MEYER *v.* FLEMING ET AL., TRUSTEES.

No. 392.   Argued January 4, 1946.—Decided February 4, 1946.

*Walter E. Meyer* argued the cause and filed a brief, *pro se.*

*William Stanley* argued the cause for respondents. With him on the brief was *W. F. Peter.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner is the owner of a substantial number of shares of stock of the St. Louis Southwestern Railway Company. In April 1934 he filed a claim for the benefit of St. Louis Southwestern in the bankruptcy proceedings which previously had been instituted under § 77 of the Bankruptcy Act (49 Stat. 911, 11 U. S. C. § 205) for the reorganization of the Chicago, Rock Island & Pacific Railway Co. The claim filed was a claim for a cause of action which St. Louis Southwestern allegedly had against the Rock Island. It amounted to many millions of dollars and arose out of an alleged conspiracy between the Rock Island and others to control the St. Louis Southwestern to their own interest, in breach of their fiduciary relationship to St. Louis Southwestern, and in violation

of the antitrust laws. It was stated in the claim that a demand on the board of directors of St. Louis Southwestern to file the claim was not made because it would be futile, the dominant stockholder and the directors of St. Louis Southwestern being parties to the conspiracy. In May 1935 the trustees of Rock Island objected to the claim by general denial. In December 1935—about a year and a half after the claim had been filed—St. Louis Southwestern filed a petition for reorganization under § 77 of the Bankruptcy Act. Shortly thereafter the petition was approved and a trustee was appointed. Thereupon the trustees of Rock Island further objected to the claim filed by petitioner on the ground that all causes of action belonging to St. Louis Southwestern had become vested in its bankruptcy trustee and could no longer be asserted in the Rock Island proceeding by petitioner. The claim was referred to a special master who, in February 1942, filed his report, concluding that petitioner should not be allowed to prosecute the claim. Two years later the district court approved the special master's report and disallowed the claim. On appeal the circuit court of appeals affirmed. 149 F. 2d 529. The case is here on a petition for a writ of certiorari which we granted because the problem presented is an important one in bankruptcy law.

The circuit court of appeals held that a stockholders' derivative suit commenced before the corporation's petition under § 77 had been approved could not be continued thereafter without permission of the reorganization court. It relied on the provisions of § 77 which gave the reorganizing court exclusive jurisdiction of the debtor and its property [1] and which give a trustee appointed in those

---

[1] § 77 (a) provides in part:

"If the petition is so approved, the court in which such order is entered shall, during the pendency of the proceedings under this section and for the purposes thereof, have exclusive jurisdiction of the debtor and its property wherever located, and shall have

proceedings the title and powers of other bankruptcy trustees.[2] But the exclusive jurisdiction granted the reorganization court by § 77 (a) is that which bankruptcy courts have customarily possessed.[3] And the title and powers of the trustee are by § 77 (c) (2) assimilated to those of trustees in ordinary bankruptcy proceedings. Certainly, so far as the enforcement of claims is concerned, there is no indication that Congress adopted a different rule in proceedings under § 77 than had long obtained in ordinary bankruptcy proceedings. Yet, if the view of the circuit court of appeals were followed, any suit which had been brought by the corporation before its petition under § 77 had been approved would be defeated when that event happened. That is not the rule in ordi-

and may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section, which a Federal court would have had if it had appointed a receiver in equity of the property of the debtor for any purpose. Process of the court shall extend to and be valid when served in any judicial district."

§ 77 (l) provides:

"In proceedings under this section and consistent with the provisions thereof; the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition was filed."

[2] § 77 (c) (2) provides in part:

"The trustee or trustees so appointed, upon filing such bond, shall have all the title and shall exercise, subject to the control of the judge and consistently with the provisions of this section, all of the powers of a trustee appointed pursuant to section 44 of this Act or any other section of this Act; and, to the extent not inconsistent with this section, if authorized by the judge, the powers of a receiver in an equity proceeding . . ."

[3] *Isaacs* v. *Hobbs Tie Co.*, 282 U. S. 734, 737–738; *Ex parte Baldwin*, 291 U. S. 610, 615; *Continental Illinois National Bank* v. *Chicago, R. I. & P. R. Co.*, 294 U. S. 648, 682–684; *Thompson* v. *Magnolia Petroleum Co.*, 309 U. S. 478, 483. And see *Thompson* v. *Terminal Shares*, 104 F. 2d 1. Cf. *In re Standard Gas & Electric Co.*, 119 F. 2d 658, 661, arising under § 77B.

nary bankruptcy proceedings.    And it would be a radical change in the law to write that rule into § 77.

Litigation instituted by a creditor may not be defeated merely by reason of the fact that he has become a bankrupt.  *Thatcher* v. *Rockwell*, 105 U. S. 467, 469–470.   Title to the claim vests, of course, in the bankruptcy trustee.[4] He is in position to take control of the litigation.   He may, as indicated in *Johnson* v. *Collier*, 222 U. S. 538, 540, start a new suit[5] and cause the old one to be abated, or intervene in the old one[6] and obtain such benefits as it affords.[7]   The choice may indeed be a valuable one.   Rights might be lost if the earlier suit were abated.   And the speculative nature of the litigation or the expense involved might indicate to the trustee that it was more provident for him not to intervene in the existing suit, nor to institute a new one, but to let the one which had been started

[4] Sec. 70 of the Bankruptcy Act, 52 Stat. 879, 11 U. S. C. § 110. The same is true under § 77 by reason of the provision in § 77 (c) (2), *supra* note 2.

[5] Sec. 11 (e) of the Bankruptcy Act, 11 U. S. C. § 29 (e), authorizes a receiver or trustee, within two years subsequent to the adjudication or within such further period of time as federal or state law permits, to institute proceedings in behalf of the estate upon any claim against which the statute of limitations had not expired at the time of the filing of the petition in bankruptcy.

This provision is applicable to proceedings under § 77 by reason of § 77 (l), set forth in *supra* note 1.

[6] Sec. 11 (c) of the Bankruptcy Act, 52 Stat. 849, 11 U. S. C. § 29 (c), provides that "A receiver or trustee may, with the approval of the court, be permitted to prosecute as receiver or trustee any suit commenced by the bankrupt prior to the adjudication, with like force and effect as though it had been commenced by him."  This provision is likewise applicable to proceedings under § 77 (l), *supra* note 1.

[7] And see *Danciger* v. *Smith*, 276 U. S. 542; *Bluegrass Canning Co.* v. *Steward*, 175 F. 537, 543–544; *Paradise* v. *Vogtlandische Maschinen-Fabrik*, 99 F. 2d 53, 55; *Bennett* v. *Associated Theaters*, 247 Mich. 493, 496, 226 N. W. 239; *Griffin* v. *Mutual Life Ins. Co.*, 119 Ga. 664, 46 S. E. 870.

run its course.[8]  As stated in *Johnson* v. *Collier, supra,* p. 540,

> "If, because of the disproportionate expense, or uncertainty as to the result, the trustee neither sues nor intervenes, there is no reason why the bankrupt himself should not continue the litigation.  He has an interest in making the dividend for creditors as large as possible, and in some States the more direct interest of creating a fund which may be set apart to him as an exemption.  If the trustee will not sue and the bankrupt cannot sue, it might result in the bankrupt's debtor being discharged of an actual liability.  The statute indicates no such purpose, and if money or property is finally recovered, it will be for the benefit of the estate.  Nor is there any merit in the suggestion that this might involve a liability to pay both the bankrupt and the trustee.  The defendant in any such suit can, by order of the bankrupt court, be amply protected against any danger of being made to pay twice."[9]

---

[8] If the suit is continued by the bankrupt, the trustee is concluded by the judgment.  *Eyster* v. *Gaff,* 91 U. S. 521, 524–525; *Paradise* v. *Vogtlandische Maschinen-Fabrik, supra* note 7, p. 55.

[9] As stated in *Van der Stegen* v. *Neuss, Hesslein & Co.,* 270 N. Y. 55, 59–60, 200 N. E. 577:

> "Again, the trustee in bankruptcy is not obliged to maintain or continue every cause of action which the bankrupt may have. He is not bound to accept burdensome property nor unprofitable contracts (*Atchison, T. & S. F. Ry. Co.* v. *Hurley,* 153 Fed. Rep. 503; affd., 213 U. S. 126), nor is he obliged to intervene in any action pending by or against the bankrupt. (*Kessler* v. *Herklotz,* 132 App. Div. 278; *Fleming* v. *Courtenay,* 98 Me. 401.) If a trustee does not take up the prosecution of a suit the defendant is not released even where the right of action is one that might have passed to the trustee. The bankrupt may continue the prosecution of the action. (*Griffin* v. *Mutual Life Ins. Co.,* 119 Ga. 664.) The relationship, therefore, between the bankrupt and his trustee is for one and the same purpose—to get out of the bankrupt's property and claims enough money to pay his debts and to relieve the bankrupt, through his discharge, from further responsibility."

The same rule obtains in equity receiverships.[10]

We see no reason why there should be a different rule in the case of stockholders' derivative suits. They are likewise suits to enforce a corporate claim. They are one of the remedies which equity designed for those situations where the management through fraud, neglect of duty or other cause declines to take the proper and necessary steps to assert the rights which the corporation has.[11] The stockholders are then allowed to take the initiative and institute the suit which the management should have started had it performed its duty. The corporation is a necessary party. *Davenport* v. *Dows,* 18 Wall. 626. Hence, it is joined as a defendant. But it is only nominally a defendant, since any judgment obtained against the real defendant runs in its favor. The reasons of policy for holding that ordinary suits to enforce a corporate claim are not abated when the corporation is adjudged a bankrupt or when a receiver is appointed are equally applicable here. The claim sought to be enforced in a derivative suit may be an important asset of the estate. It might be lost to the estate through the operation of statutes of limitations, if the trustee or receiver were required to start anew. As in case of ordinary suits to enforce corporate claims, he should be allowed a choice to let the suit continue under the stockholders' auspices; [12] to intervene in it; [13] to start a new suit; or, in case he deems it more provi-

[10] See *Missouri, K. & T. Trust Co.* v. *German National Bank,* 77 F. 117, 122–123; *Boston Elevated R. Co.* v. *Paul Boynton Co.,* 211 F. 812, 822–823; *Hartford Accident & Indemnity Co.* v. *Federal Bond & Mortgage Co.,* 59 F. 2d 950, 956. See 1 Clark on Receivers (2d ed., 1929) §§ 614, 615.

[11] Glenn, The Stockholder's Suit, 33 Yale L. Journ. 580.

[12] Cf. *American Steel Foundries* v. *Chicago, R. I. & P. R. Co.,* 231 F. 1003; *Seagrist* v. *Reid,* 171 App. Div. 755, 759, 157 N. Y. S. 979. And see 4 Cook on Corporations (8th ed., 1923) § 748.

[13] *Meyer* v. *Page,* 112 App. Div. 625, 627, 98 N. Y. S. 739; *Floyd* v. *Layton,* 172 N. C. 64, 89 S. E. 998.

dent from the point of view of the estate to make a settlement of the claim or to reserve it for the reorganized company, to cause it to be abated.[14] He might conclude that the more provident course was to let the suit continue without interference.[15] That decision might be dictated by the speculative nature of the suit and the expense involved, as *Johnson* v. *Collier, supra,* indicates. If the trustee will not sue and the stockholder cannot continue with the litigation, what might turn out to be a valuable claim might be lost to the estate, not only through the operation of statutes of limitations, but in cases like the present through a discharge of the debtor.[16] The point is that the trustee or receiver, being in a position to take control of the litigation by reason of the fact that the cause of action has become a part of the estate, should have the opportunity to make the choice which is most advantageous to the estate. Cf. *Thompson* v. *Magnolia Petroleum Co.,* 309 U. S. 478, 483. The fact that the corporation is nominally a defendant should not lead to any different result.[17] That gives the suit only a difference in form, not a difference in substance.

---

[14] Moreover, the stockholder's suit might so intimately affect the administration of the bankruptcy or receivership estate as to require that it be continued only under the auspices of the trustee or receiver. See *Adler* v. *Seaman*, 266 F. 828, 835–837; *Seaman* v. *McCulloch*, 8 F. 2d 820, 825–826.

[15] *In re National Republic Co.*, 109 F. 2d 167, 171; *McAnarney* v. *Lembeck*, 97 N. J. Eq. 361, 127 A. 197.

[16] Sec. 77 (f) provides for the discharge of the debtor "from its debts and liabilities, except such as may consistently with the provisions of the plan be reserved . . ."

[17] But see *Coyle* v. *Skirvin*, 124 F. 2d 934, 937–938 (receivership). The provision in § 77 (j) empowering the court to "enjoin or stay the commencement or continuation of suits against the debtor until after final decree" obviously relates to suits where claims are asserted against the debtor, not where the debtor is made a nominal defendant for the purpose of obtaining a judgment in its favor.

We have in the present case not a stockholders' derivative suit filed before the bankruptcy of his corporation, but a claim filed in the bankruptcy proceedings of the alleged debtor (Rock Island) by a stockholder on behalf of his corporation, St. Louis Southwestern. If the claim were to be filed after the petition for the reorganization of St. Louis Southwestern had been approved, it could be done only with the consent of the bankruptcy court. For it has exclusive authority to determine how causes of action which have become a part of the bankruptcy estate shall be enforced. See *Porter* v. *Sabin,* 149 U. S. 473; *Klein* v. *Peter,* 284 F. 797. But since the claim was filed before the petition of St. Louis Southwestern under § 77 had been approved, no reason is apparent why that event should have a different effect on the claim than it would have had on a suit which had been previously instituted by or on behalf of the corporation. Indeed, the facts of this case emphasize the reason for giving the trustee an opportunity to choose what course to take. The claim was filed in April 1934, a year and a half prior to the time when the petition of St. Louis Southwestern under § 77 had been approved. We are told that the time for filing of claims against the Rock Island expired over eleven years ago. If the claim were now disallowed, the trustee of St. Louis Southwestern, if he desired to assert it, would be faced with the task of obtaining leave to file out of time.[18] There is, therefore, the same reason for allowing

[18] Sec. 77 (c) (7) provides that the judge "shall promptly determine and fix a reasonable time within which the claims of creditors may be filed or evidenced and after which no claim not so filed or evidenced may participate except on order for cause shown . . ." This is the equity rule (5 Collier on Bankruptcy (1944) p. 537) which permits the filing of claims out of time provided the claim is equitable, the claimant is not chargeable with laches, and the assets have not been distributed (see *Conklin* v. *United States Shipbuilding Co.,* 136 F. 1006, 1009–1010; *Pennsylvania Steel Co.* v. *New York City R. Co.,* 198 F. 721, 740–742); and provided further that the late filing does not unduly delay the proceedings. *Guaranty Trust Co.* v. *Henwood,* 86 F. 2d 347, 353.

the estate to obtain the benefits of the claim which has been filed, as there would be for allowing the trustee the opportunity to take over a stockholders' derivative suit previously instituted.

It is said, however, that the claim was properly disallowed because the corporation on whose behalf the claim was filed was not before the court. As we have said, the corporation is a necessary party in a stockholders' derivative suit. *Davenport* v. *Dows, supra.* It can be joined as a party and brought in by summons in the usual way. But the filing of a claim in bankruptcy is not the institution of a plenary suit. It is a claim against assets in the hands of the bankruptcy court, not an action *in personam.* The absence of the corporation is a proper basis for an objection to the claim. But there is no way available to the stockholder to join it in the claim other than by moving the bankruptcy court to bring it in. The bankruptcy court has that power.[19] The objections to the present claim, however, were not based on the absence before the court of St. Louis Southwestern or its trustee.[20] But whether such an objection was made or not, the proper and necessary procedure for the bankruptcy court is to summon in the corporation or its trustee so that all parties

---

[19] Sec. 2 (a) (6) of the Bankruptcy Act, 11 U. S. C. § 11 (a) (6) grants the court power to "Bring in and substitute additional persons or parties in proceedings under this title when necessary for the complete determination of a matter in controversy." See 1 Collier on Bankruptcy (14 ed., 1940), pp. 214–218.

[20] One of the grounds on which the special master based his recommendation for disallowance of the claim was that the claim was improperly filed in the first instance, since the corporation was not made a party. But the district court, like the circuit court of appeals, proceeded on the ground that the claim could no longer be prosecuted after approval of the petition for the reorganization of St. Louis Southwestern unless the bankruptcy court in that proceeding expressly authorized it.

will be bound by any order which is entered on the merits.[21]

It is said, however, that by reason of events which have transpired since St. Louis Southwestern filed its petition for reorganization under § 77, the claim which Meyer filed in the Rock Island reorganization proceedings was properly disallowed. In the first place, it appears that a reorganization plan for the St. Louis Southwestern has been approved by the district court. *In re St. Louis Southwestern R. Co.*, 53 F. Supp. 914. The Interstate Commerce Commission, in preparing the plan, investigated Meyer's charges and concluded that they had no substantial support. *St. Louis Southwestern R. Co. Reorganization*, 249 I. C. C. 5, 46–149; 252 I. C. C. 325, 330–337. It refused to recommend that the cause of action be reserved in the plan of reorganization. 252 I. C. C., pp. 334–335. The district court concurred in that recommendation (53 F. Supp., p. 925), saying that the trustee had investigated the charges, found no basis for instituting legal proceedings on behalf of St. Louis Southwestern, and that there was no charge that the trustee had acted in bad faith or had shown a lack of diligence. 53 F. Supp. 926. Moreover, we were advised on oral argument, although the matter does not appear of record, that a motion of Meyer in the St. Louis Southwestern proceedings for an order directed to the trustee to show cause why Meyer should not be permitted to prosecute the claim filed by him in the Rock Island proceedings was denied in February 1944. The grounds of this denial do not appear. We can infer, on the basis of the opinion of the district court confirming the plan, that the motion was denied because the court was of the view that the claim had no substance. But a decision of the court not to direct or authorize its trustee to undertake the prosecution of a

---

[21] Cf. 14 Boston Univ. L. Rev. 802, 808.

claim is one thing; the problem presented here is quite a different one. While the court might not deem it provident to have the estate assume that burden, the continuation of the prosecution of the claim by Meyer might be wholly compatible with the disposition of the claim by the reorganization court or with the administration of the estate. It is not apparent in this case that there would be any such inconsistency in view of the fact that the plan makes no provision for the claim. As stated in *Johnson* v. *Collier, supra,* p. 540, "If the trustee will not sue and the bankrupt cannot sue, it might result in the bankrupt's debtor being discharged of an actual liability."

The order disallowing the claim will be reversed. On remand of the cause the district court will allow the claim to be amended by joining St. Louis Southwestern or its trustee. If it is established that the continued prosecution of the claim will be inconsistent with the plan of reorganization of St. Louis Southwestern or the administration of its affairs, the claim should be disallowed. If it is not so established, the claim should then be considered on its merits.

*So ordered.*

Mr. Justice Frankfurter and Mr. Justice Jackson took no part in the consideration or decision of this case.