In the Matter of **IRA HAUPT & CO.**, a Limited Partnership, Bankrupt.

**Gladys KNAPP, Bernard Klebanow, George Lewis, Egon H. Ottinger, Michael Sloan, Henry Schlenger, and Harold L. Marantz, Kenneth Alan Marantz and Edith F. Marantz, as Executors of the Estate of Charles Marantz, Appellants,**

v.

**Charles SELIGSON, as Trustee in Bankruptcy of Ira Haupt & Co., Appellee.**

No. 316, Docket 30218.

United States Court of Appeals Second Circuit.

Argued April 6, 1966.

Decided May 3, 1966.

Max Freund, New York City (Rosenman, Colin, Kaye, Petschek & Freund, New York City, Jerome E. Sharfman, New York City, of Counsel), for appellants.

Harvey R. Miller, New York City, (Seligson & Morris, New York City) for appellee.

Before FRIENDLY and HAYS, Circuit Judges, and CLARIE, District Judge.*

FRIENDLY, Circuit Judge:

The appellants are limited partners of Ira Haupt & Co., who have filed claims as creditors in the bankruptcy proceeding of that firm now pending before Referee Ryan in the District Court for the Southern District of New York. Although an involuntary petition was filed on March 23, 1964, and the firm was adjudicated a bankrupt on June 16, it was not until October 6 that a trustee was appointed. Two days later the trustee, Charles Seligson, Esq., applied to the Referee *ex parte* for authority to employ his own law firm, Seligson & Morris, as his counsel under a general retainer. See General Order 44. His affidavit said that he wished "to employ the aforesaid law firm, notwithstanding his membership therein because of the expertise of said law firm in proceedings of this nature quite apart from the experience of applicant." The trustee also stated his belief "that the circumstances relevant to this proceeding are such that a most intimate relationship between the Trustee and his counsel is imperative" and that retention of his firm would "enable a close cohesive administration of the bankrupt estate which will enure to the benefit of the bankrupt's creditors." He disclaimed compensation other than his commissions as trustee for any legal services he might personally render, but announced an intention to share his compensation as trustee with his partners and to participate in the compensation received by his firm for the services of other members and associates. The Referee granted the application without a hearing. A week later, he granted another *ex parte* application by the trustee to retain an independent law firm "to render professional services in conjunction with his general counsel" in handling claims under various insurance bonds and policies—a matter of urgency because

---

* Of the District of Connecticut, sitting by designation.

contractual periods of limitation were about to expire.

Shortly after his appointment, the trustee requested appellants' counsel to send him copies of complaints in derivative actions they had initiated, presumably with a view to determining whether he should take over the prosecution. See Meyer v. Fleming, 327 U.S. 161, 167–168, 66 S.Ct. 382, 90 L.Ed. 595 (1946); Klebanow v. New York Produce Exch., 344 F.2d 294, 299 (2 Cir. 1965). Counsel promptly complied with this request and called the trustee's attention to additional areas believed to require investigation with a view to suit. In January 1965, appellants' counsel complained to the trustee about delay in the prosecution of the derivative actions, expressed the feeling that this was due to the trustee's general counsel being understaffed, and voiced a fear that the trustee's ability to pass on that question was compromised by the retainer of his own firm. Not being satisfied with a letter from the trustee giving his view of the situation, appellants' counsel moved before the Referee to require the trustee to terminate the general retainer of his own firm and hire another or others. The supporting affidavit, in addition to alleging the background of the controversy, charged that three of the five partners of the firm at the time of its retainer had left, including one whose qualifications had been stressed by the trustee in applying for the firm's appointment; and that the firm now comprised only the two named partners and at most four young associates.[1] The motion was argued, the trustee later submitted an affidavit, and appellants' counsel filed a supplemental affidavit to the effect that after the argument the trustee had retained still another firm to investigate and advise him as to the merits of three derivative actions. The Referee denied the motion and Judge Palmieri dismissed a petition to review. This appeal followed.

Although the parties have not questioned our power to hear this appeal, we are bound to consider and determine our jurisdiction. The appeal comes within the letter of § 24a of the Bankruptcy Act which invests the courts of appeals "with appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions in proceedings in bankruptcy, either interlocutory or final, * * * to review, affirm, revise, or reverse, both in matters of law and in matters of fact." The extreme breadth of this language, however, has been narrowed by a judicially created exception, whose contours are themselves vague, excluding "orders not amounting to judicial rulings adjudging the rights of parties." 2 Collier, Bankruptcy ¶ 24.11, at 732, ¶ 24.39 (14th ed. 1964); see In re Berthoud, 238 F. 797 (2 Cir. 1916); General Elec. Co. v. Beehive Telecasting Corp., 284 F.2d 507 (10 Cir. 1960); Lesser v. Migden, 328 F.2d 47 (2 Cir. 1964). If the decision below did nothing more than uphold the Referee's exercise of discretion in declining to require severance of the retainer for alleged dilatory performance, we would consider the appeal as presenting a mere administrative matter beyond our jurisdiction to review. However, as will appear hereafter, appellants' argument raises the question of the power of the court to authorize a trustee to appoint his own firm as counsel and of general practice in the administration of bankrupt estates. We think this takes the case outside the judicially created exception.

Until 1938, § 72 of the Bankruptcy Act prohibited a trustee in bankruptcy from receiving "any other or further compensation for his services" than that expressly authorized by the statute. This plainly forbade any allowance for legal services performed in addition to the trustee's statutory duties. See In re George Halbert Co., 134 F. 236 (2

---

1. The affidavit claimed, and apparently it is not disputed, that Mr. Morris has not been active in connection with the Haupt bankruptcy, and that much of the trustee's own time was necessarily being devoted to other matters. An affidavit by the trustee confirmed the departure of the three partners but pointed out that a fifth associate had been employed.

Cir. 1904); Holland v. McIlwaine, 223 F. 777 (4 Cir. 1915). However, the Chandler Act added to the quoted provision the phrase "as required by this Act." Since the trustee is not required to render legal services, the amendment would seem to permit a further allowance to him for acting as his own lawyer. Without more, however, a trustee who was an attorney would still have been barred from sharing in fees allowed his firm by General Order 42 as it then stood. See 11 U.S.C.App. p. 2016; Weil v. Neary, 278 U.S. 160, 172–173, 49 S.Ct. 144, 73 L.Ed. 243 (1929). Addressing itself to this problem Congress at the same time enacted § 62c:

> "A custodian, receiver, or trustee or the attorney for any of them, or any other attorney, rendering services in a proceeding under this title or in connection with such proceeding, shall not in any form or guise share or agree to share his compensation for such services with any person not contributing thereto, or share or agree to share in the compensation of any person rendering services in a proceeding under this title or in connection with such proceeding, to which services he has not contributed: *Provided, however,* That an attorney-at-law may share such compensation with a law partner or with a forwarding attorney-at-law, and may share in the compensation of a law partner.[2]"

We see no reason to doubt that these changes had the effect of permitting a trustee who is an attorney to receive added compensation for legal services rendered by him, see 6 Remington, Bankruptcy §§ 2721, 2737 (5th ed. 1952).[3] Shortly after adoption of the Chandler Act, Judge Conger held that a trustee might be rewarded beyond the statutory limits for extraordinary services in going abroad for an eight week period, In re Balsa Wood Co., 46 Am. Bankr.R., N.S., 661 (S.D.N.Y.1940), and Judge Goddard, with much experience in bankruptcy matters, ruled that a receiver and his law partner were entitled to compensation for legal services. In re Street Rys. Advertising Co., 54 F.Supp. 577 (S.D.N.Y.1941). It seems equally plain that § 62c permits a trustee who has rendered legal services and is a member of a law firm to share added compensation allowed him for such services with his partners. However, in a passage not cited to us by the parties, Collier states that the proviso in § 62c "should not be understood to authorize a receiver or trustee, who happens to be a member of the bar, to share his compensation *qua* receiver or trustee with his law partner" since the "exception refers only to the fees of an attorney-at-law earned *qua* attorney"; and the "same principle would seem to prevent an attorney for the trustee, who is his law partner, to share his attorney's fees with the latter." 3 Collier, supra, ¶ 62.37, at 1639.[4] Apparently there is no case law on these matters and the congruity of the second with the words and purpose of the statute is questionable.[5] We are not disposed to decide

---

**2.** The Supreme Court amended General Order 42 on January 16, 1939 to omit any reference to the sharing of fees. See 11 U.S.C.App. Order 42.

**3.** Appellants would draw a negative inference from Congress' failure to adopt a proposal by the Bankruptcy Committee of the Association of the Bar of the City of New York that would have spelled this out in detail. See House Judiciary Committee Hearings on H.R. 8046, p. 359. As we see it, Congress found it possible to say more in five words than the Bankruptcy Committee had said in seventy.

**4.** The text continues:
"Where necessity arises, such participation should be expressly excluded by a supplement to the partnership agreement. Local rules frequently forbid the employment of an attorney who is law partner to the trustee or receiver."

**5.** If a trustee who is an attorney participates in work done for himself by his law firm, it is by no means clear that § 62c would prohibit his sharing in the fees since these would not be services "to which * * * he has not contributed"; as a practical matter, it is somewhat hard

issues of such importance to this estate and others without benefit of full consideration by the district court in a proceeding wherein all interested parties, including bar and creditor associations, have had an opportunity to be heard. No award of compensation to the trustee or his firm is before us and it could well be that before that issue arises a different method of compensation will be advanced. With illegality of the proposed plan of compensation by no means established, the Referee was not required to order termination of the retainer on that ground. Contrast In re Oshwitz, 183 F. 990 (S.D.N.Y.1910).

■ Whether Collier is right or wrong as to the legality of a trustee's sharing in legal fees awarded to a partnership of which he is a member, we do not think the retainer of a trustee's own firm is a practice to be encouraged in substantial estates. Judge Goddard expressed this view in the opinion already cited, saying "Such appointments should be the exception and made only when sound special circumstances justify." 54 F.Supp. at 578. The reasons are plain enough. The conduct of bankruptcy proceedings not only should be right but must seem right. Even when litigation is likely to be the trustee's chief responsibility, there must always be doubt whether he can make a truly disinterested determination that his own firm, no matter what its overall merit, is best qualified to be his counsel in the circumstances of the particular case. A large bankruptcy makes tremendous demands on lawyer-power, especially in its early stages; the most experienced small firm may find its resources inadequate to meet these needs in addition to its other responsibilities. The appointment of additional firms as special counsel to handle problems not truly demanding specialized experience is not a completely satisfactory substitute for the initial appointment of one able to carry the whole task; there is bound to be duplication of effort [6] which, despite the "one lawyer" rule with respect to allowances, see 3 Collier, supra ¶ 62.12 [8], at 1506, the court may be unable to weed out in determining compensation [7]—particularly when the officer on whom it should be able to rely for help has somewhat disabled himself from giving it, as he wholly has with respect to the fee application of his own firm. Some creditors may doubt, as here, whether a trustee is able to take quite the same objective and critical attitude toward the amount and quality of effort being put forward by his own law firm that he would toward another. On the other hand, in contrast to the situation in this case, there may be instances where creditors would believe the relationship had caused a trustee to be overly litigious. Finally, even the most experienced attorney who becomes a trustee in a complicated bankruptcy

---

to see why the case should be worse when, as here, the trustee has waived added compensation for legal services rendered by him. On the other hand, it can be argued that § 48 is intended to provide receivers or trustees with a fixed measure of compensation, that the 1938 amendment to § 72 meant only that a receiver or trustee who had performed services not required from him as such need not go unrewarded for labor actually given, and that the amendment to § 62c recognized only that a receiver or trustee who was an attorney or an attorney for the receiver or trustee or a creditor could share compensation for such labor with law partners, with a receiver or trustee still prohibited from profiting from labor performed by others.

6. This is illustrated by the trustee's statement, in a letter to appellants' counsel, in regard to the special counsel retained to handle insurance claims:

"Almost immediately after their retention I discovered that it was impossible to compartmentalize my investigation. There was no logical way to separate the development of facts regarding possible insurance claims from the development of facts which might give rise to other causes of action."

7. We recognize that in the instant case the trustee's disclaimer of compensation for legal services rendered by him is a countervailing factor.

can benefit from the advice of an independent general counsel; we need not go so far as the familiar adage concerning self-representation by a lawyer to say that a second head is not without value in such matters simply because the first is exceedingly good.[8]

We are not convinced by the rather conclusory statements in the papers before us that "sound special circumstances" in this case justified departure from what ought to be the general practice of a trustee's retaining a firm other than his own in substantial estates. Hence, if the issue of the retainer had been raised at the outset in October 1964, and nothing more had been submitted, the Referee's grant of the authorization or failure to revoke it might well have required reversal by the district court. However, the situation had considerably altered by the spring of 1965 when appellants' motion was made and decided, and still more by October when the district court dismissed the petition for review. The trustee's firm and the first special counsel employed by him had been laboring for many months, and the second firm had been at work since March. The

obvious detriment to the estate from now making a change of general counsel would far outweigh any theoretical possibility of benefit.

The order is therefore affirmed.

---

8. As against these forceful considerations we cannot accept appellee's contention that the "sound special circumstances" principle was effectively eliminated in the Southern and Eastern Districts of New York because a provision imposing that requirement in former Eastern District Rule 12 was omitted in what became Rule 9 and is now Rule 10 of the bankruptcy rules of these courts. See explanatory note to Bankruptcy Rule 9—"Appointment of Attorneys" in Rules of the United States District Courts for the Southern and Eastern Districts of New York, effective March 1, 1952 (Court Press ed. at 152).

The trustee has called attention to several important cases in various districts in this circuit where a trustee in bankruptcy has been allowed to appoint his own firm as counsel. Although this serves to explain the course followed here and eliminates any possibility of personal criticism—which is in no event intended—we have never passed upon this practice and do not approve of it for substantial estates as a general rule. The trustee has

also cited a statement by a senior employee of the SEC that "In order to promote more economical administration of estates, the Commission has recommended in a number of Chapter X proceedings that trustees and receivers who are attorneys act as their own counsel, utilizing where necessary the service of their law partners or associates." Bandler, Securities Trading and Fee Sharing under Chapter X of the Bankruptcy Act, 35 Ref.J. 69, 74 (1961). However, the same article notes "It has been suggested that there may be some impropriety in the employment by trustees of their law partners or firms as counsel in ordinary bankruptcy." Ibid. We must confess inability to perceive sound basis for a distinction. We likewise find inapposite the common practice whereby a lawyer designated as executor retains his own law firm; a testator would normally expect and desire that the firm that handled his affairs during his life should continue to do so after his death. Similar considerations apply to a lawyer named as trustee in an *inter vivos* trust.