**Clifford E. NELSON et al.,**
**Plaintiffs,**

v.

**PACIFIC SOUTHWEST AIRLINES**
**et al., Defendants.**

**No. 73–429.**

United States District Court,
S. D. California.

Jan. 16, 1975.

1026

William Jaeger, Broad, Khourie & Schultz, M. Armon Cooper, Rubenstein & Hawkins, San Francisco, Cal., for plaintiffs.

Frank Rothman, Wyman, Bautzer, Rothman & Kuchel, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

ENRIGHT, District Judge.

Plaintiff Clifford E. Nelson has brought this derivative and class action suit against Pacific Southwest Airlines ("PSA"), Westgate-California Corporation ("Westgate"), and other defendants. The two motions for summary judgment which currently are at issue involve Causes of Action Four through Eight of plaintiff's First Amended Complaint. These counts allege that the defendants violated provisions of federal and California antitrust and unfair trade practice laws, and breached and conspired to breach certain common law fiduciary duties.

PSA has moved for summary judgment on the fifth cause of action on the ground that no acquisition has occurred within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18, so as to justify the award of damages or injunctive relief. The defendant also asks for summary judgment as to Causes of Action Four through Eight, on the ground that plaintiff has failed to comply with Rule 23.1 of the Federal Rules of Civil Procedure, which requires that the plaintiff in a derivative suit attempt to obtain the desired action from the directors of the corporation, or plead the reasons for not making such effort. For the reasons set forth in this memorandum, this court holds that both motions should be denied.

## I. THE CLAYTON ACT MOTION

The allegations contained in the Fifth Cause of Action are based upon an agreement entered into in July 1972 between PSA and Westgate, under which PSA was to acquire Westgate's controlling stock interest in Air California, Inc. ("Air Cal"). Plaintiff alleges that the agreement, if carried out, would lessen competition, tend to create a monopoly, and create a monopoly in scheduled air passenger transportation in the California air corridor [1] in violation of Section 7 of the Clayton Act.

Subsequent to July 1972, the United States Department of Justice filed a complaint against PSA, Westgate, and Air Cal seeking to enjoin the acquisition on the ground that it violated Section 7. *United States v. Pacific Southwest Airlines, et al.,* 358 F.Supp. 1224 (C.D.Cal. filed Dec. 5, 1972). This complaint was dismissed by stipulation of the parties on October 15, 1973, after the acquisition was terminated by a mutual release executed by PSA and Westgate on July 5, 1973.

PSA now contends that the termination of the acquisition agreement necessitates the granting of summary judgment in this case. It claims that the complaint fails to allege an "acquisition" within the meaning of Section 7, which provides, in part:

No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

Defendant's contention, in essence, is that a completed acquisition is an essential element of a Section 7 violation, while the plaintiffs have alleged only a planned acquisition.

While relief under Section 7 might be unavailable where nothing more than a planned acquisition is shown, this court would hold that there exists a genuine issue as to whether the relationship

---

1. The term "California air corridor" is used to denote the geographic area served by air carriers connecting the Los Angeles, San Diego, Orange County, Long Beach, Ontario, and Hollywood-Burbank airports in the southern part of California, with the San Francisco, Oakland, San Jose, and Sacramento airports in the northern part of the state, and several of these airports with each other.

created by the July 1972 agreement constituted an acquisition for Clayton Act purposes, and accordingly that summary judgment under Federal Rule 56 is inappropriate.

Although few reported cases have dealt with the issue of the scope of the word "acquisition," these cases have given the term a broad interpretation. In *United States v. Columbia Pictures Corp.*, 189 F.Supp. 153 (S.D.N.Y.1960), Screen Gems, Inc., a wholly owned subsidiary of Columbia, was granted the exclusive right to distribute, for fourteen years, approximately 600 feature films owned by Universal Pictures Company, Inc. Defendants alleged that such an agreement did not constitute an acquisition for Clayton Act purposes, contending that the statute embraced only "mergers or their equivalent, or stated differently, amalgamations of business enterprises." The court rejected this narrow construction.

> As used here, the words "acquire" and "assets" are not terms of art or technical legal language. In the context of this statute, they are generic, imprecise terms encompassing a broad spectrum of transactions whereby the acquiring person may accomplish the acquisition by means of purchase, assignment, lease, license, or otherwise.
>
> . . .
>
> The statute imposes no specific method of acquisition. It is primarily concerned with the end result of a transfer of a sufficient part of the bundle of legal rights and privileges from the transferring person to the acquiring person to give the transfer economic significance and the proscribed adverse "effect." *Id.* at 182

The court held that Screen Gems had acquired valuable rights by means of the exclusive license, that the rights so acquired had "substantial economic value," and that the acquisition violated Section 7.

*United States v. ITT Continental Baking Co.*, 485 F.2d 16 (10th Cir. 1973), *cert. granted*, 416 U.S. 968, 94 S.Ct. 1990, 40 L.Ed.2d 557 (1974), considered the scope of the term "acquisition." although in the context of a consent cease and desist order, rather than the Clayton Act. The court held that a "sales agreement," under which a second bakery ceased the production of bread and became an exclusive distributor of bread produced by Continental, constituted an acquisition by Continental of an asset of the other bakery.

In light of such broad constructions of the term "acquisition," this court cannot hold that an actual transfer of the stock of Air Cal from Westgate to PSA would be a necessary element of a Clayton Act violation. Section 7 was enacted as remedial legislation, designed to curtail the harm to a competitive economy caused by the concentration of economic power. Even if Westgate never actually transferred ownership of the Air Cal stock to PSA, harm to the plaintiff and to the economic system might have resulted from a less formal arrangement under which a single corporation achieved control of the decision making processes of the two largest air passenger carriers in the California air corridor.[2] This court would be reluctant to hold, at this stage in the litigation, that the 1972 agreement did not transfer "a sufficient part of the bundle of legal rights and privileges" of Air Cal to PSA, so as to violate the Act.

The affidavit of William L. Jaeger, submitted by the plaintiff in opposition to this motion, indicates that PSA may have gained substantial control over the decision-making processes of Air Cal dur-

---

2. Plaintiff contends that PSA and Air Cal controlled approximately 70% and 11% of the passenger traffic in the corridor, respectively, at the time that they entered into the acquisition agreement. Assuming that the relevant product and geographic markets are those alleged by the plaintiff, these percentages would be sufficient to make any acquisition of Air Cal by PSA presumptively a violation of Section 7. *United States v. Philadelphia National Bank*, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963).

ing the one year pendency of the acquisition agreement. The affidavit asserts that, subsequent to July 1972, Air Cal subleased two of its Boeing 737 aircraft to PSA, and that Air Cal may have delayed improvements to ticket counters and other facilities. Further, exhibits submitted by the plaintiff indicate the possibility that, because of the pendency of the agreement, construction of a new headquarters office for Air Cal at Newport Beach was cancelled, and plans to modify certain airplanes were postponed pending approval by PSA.

In light of these assertions, plaintiff should have the opportunity to determine through discovery the extent of control over Air Cal which PSA assumed between July 1972 and July 1973. If the plaintiff is able to demonstrate that PSA achieved significant control over the decision-making processes or the property of Air Cal during the pendency of the agreement, then the agreement could constitute an acquisition for Section 7 purposes.

■ If an acquisition of Air Cal by PSA is shown to have taken place in 1972, then the subsequent termination of the agreement would not preclude recovery by the plaintiff. The plaintiff should be permitted to recover for any injury which he could prove that he suffered by virtue of the acquisition of Air Cal by PSA. Damage which plaintiff suffered during the pendency of the agreement would not be repaired by the mutual release executed by the parties. Further, PSA might be shown to have benefited from its own allegedly illegal conduct. To accept PSA's position on this point would permit a corporation to violate the antitrust laws with impunity, but to escape civil liability by terminating all allegedly illegal relationships at any time prior to the trial in a lawsuit against it.

Accordingly, it is held that PSA is not entitled to summary judgment on the issue of the availability of money damages under Section 7 of the Clayton Act.

*Injunctive relief:* PSA contends that injunctive relief is not available to the plaintiff once the proposed acquisition is terminated. Injunctions restraining future violations of the Clayton Act are authorized by Section 16 of the Act, 15 U.S.C. § 26. The section provides that injunctions are available "under the same conditions and principles as injunctive relief . . . is granted by courts of equity."

■ The proper test to be applied in determining whether injunctive relief should be granted in an individual case is that stated by the United States Supreme Court in *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969):

That remedy [an injunction under Section 16] is characteristically available even though the plaintiff has not suffered actual injury [citation omitted]; he need only demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur. *Id.* at 130, 89 S.Ct. at 1580.

Not only is it unnecessary to demonstrate actual injury, but the plaintiff need not even prove that a violation of the antitrust laws has occurred. The only requirement is that the moving party satisfy the court that relief is needed. *United States v. W. T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

■ PSA contends that, in light of the abandonment of the agreement, plaintiff cannot prove a significant threat of an impending violation and, accordingly, that plaintiff cannot obtain injunctive relief. However, the plaintiff contends that the 1972 agreement was part of an overall scheme, which commenced at least as early as 1970, under which PSA has sought to eliminate Air Cal as a competitor. Plaintiff also alleges that he currently is engaged in discovery designed to obtain information bearing on the intention of PSA to acquire Air Cal. This court holds that there is a genuine

issue as to whether such a threat of injury exists, and that summary judgment on this issue is inappropriate at the present time. This conclusion is supported by the warning of the Supreme Court that

> [i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is a probability of resumption. *United States v. Oregon State Medical Society,* 343 U.S. 326, 333, 72 S.Ct. 690, 696, 96 L.Ed. 978 (1952).[3]

Accordingly, the plaintiff is entitled to pursue further discovery, and to present evidence on the issue of whether there exists "a significant threat of injury from an impending violation of the antitrust laws."

## II. THE RULE 23.1 MOTION

Federal Rule of Civil Procedure 23.1, entitled "Derivative Actions by Shareholders," provides, in relevant part:

> The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders and members, and the reasons for his failure to obtain the action or for not making the effort.

Plaintiff, in paragraph 6 of the First Amended Complaint, alleges that a demand on the directors of Air Cal would have been futile in that, at the time of the filing of the suit, five of the seven directors of Air Cal also were officers or directors of Westgate, which owned 79% of the common stock of Air Cal, and that the other two directors were under the control of Westgate, in that they served at the pleasure of Westgate's board. The plaintiff alleges that the interests of the directors were in conflict with those of Air Cal, and that they would not act to bring the instant litigation, which would challenge their own, allegedly illegal conduct.

### A. *Demand on New Directors*

Defendant PSA has moved to dismiss Causes of Action Four through Eight,[4] asserting that five of the eight present directors of Air Cal did not serve in that capacity at the time of the alleged wrongdoing, and that the plaintiff is required to make a demand on the current board of directors as a prerequisite to the continued maintenance of the suit.

■■ There is no explicit requirement in Rule 23.1 that a demand be made upon directors who assume their positions subsequent to the commencement of suit. This court reads the rule to require a demand only on the directors in office at the time that the suit is commenced. Therefore, a demand by the plaintiff on the present directors of Air Cal is unnecessary.

■ Federal Rule 23.1 is a rule of pleading, not of substantive law. Accordingly, it is irrelevant for the purposes of this motion whether the present directors of Air Cal would be permitted to assume control of this lawsuit if they sought to do so. Thus, *In re Penn Central Securities Litigation,* 335 F.Supp. 1026 (E.D.Pa.1971), a case upon which the defendants rely, is not on point. In that case, new directors, appointed after the railroad became bankrupt, moved to

---

3. This court also is aware of the caveat that "summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles . . ." *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *In re Western Liquid Asphalt Cases,* 487 F.2d 191, 199 n. 8 (9th Cir. 1973), cert. denied, *Standard Oil Co. of Cal. v. Alaska,* 415 U.S. 919, 94 S.Ct. 1419, 39 L. Ed.2d 479 (1974).

4. Although defendant's moving papers include the Seventh Cause of Action in this motion for summary judgment, that cause of action is not a derivative claim, but is maintained as a class action under Federal Rule 23. Accordingly, this cause of action is not subject to the requirements of Rule 23.1, and is not a proper subject of the present motion.

take over exclusive control of certain derivative suits. The court granted this motion because of the substantive law favoring actions being brought by the corporation itself, but not because of failure of the plaintiffs to bring a demand upon the new board under Rule 23.1.

Other cases cited by the defendant also fail to support its position. *Lerman v. ITB Management Corp.*, 58 F.R.D. 153 (D.C.Mass.1973) and *Brody v. Chemical Bank*, 482 F.2d 1111 (2d Cir. 1973), *cert. denied*, 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1974) appear to be situations in which changes in the composition of the boards of directors occurred subsequent to the alleged wrongdoing, but prior to the filing of the derivative suits. In *Coyle v. Skirvin*, 124 F.2d 934 (10th Cir.), *cert. denied*, 316 U.S. 673, 62 S.Ct. 1044, 86 L.Ed. 1748 (1942) and *Starbird v. Lane*, 203 Cal.App.2d 247, 21 Cal. Rptr. 280 (1962), the changes occurred after suit was brought, but prior to the filing of an amended complaint, in which a new derivative cause of action was added.

A result contrary to that reached here would be overly burdensome to plaintiffs in derivative suits. If the present motion for summary judgment were to be granted, the present plaintiffs would be required to make a demand and file an amended complaint every time that a change in the composition of the board of directors occurred. Election of directors may occur annually, and more frequent changes may result from death, resignation, or removal. The result would be to further delay already protracted litigation, while the plaintiff repeatedly awaited board action and filed amended complaints.

*Meyer v. Fleming*, 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595 (1946) deals with the possession by a shareholder of the right to continue or terminate a derivative suit after the corporation, in whose name the suit had been brought, filed for reorganization under the Bankruptcy Act. The Court held that the trustees in bankruptcy

> should be allowed a choice to let the suit continue under the stockholders' auspices; to intervene in it; to start a new suit; or, in case he deems it more provident from the point of view of the estate to make a settlement of the claim or to reserve it for the reorganized company, to cause it to be abated. *Id.* at 167–68, 66 S.Ct. at 386.

However, the Court stated that where the trustees failed to intervene or sue, the plaintiffs were not barred from continuing to prosecute the action. *Id.* at 164–65, 66 S.Ct. 382. The *Meyers* case indicates that the plaintiffs are not required to seek to have the new directors intervene in the suit. Though the plaintiffs may be bound by the decision of the board, it is the board itself which must initiate such activity. *See also In re Penn Central Securities Litigation, supra.*

B. *Sufficiency of Pleading of Futility*

■ The defendant also alleges that it is entitled to summary judgment on these causes of action because the plaintiff has not demonstrated that it was justified in failing to make a demand on the directors of Air Cal regarding the commencement of legal action against PSA. Rule 23.1 requires that the plaintiff in a derivative action plead "with particularity" the reasons for failing to make a demand on the board of directors. The requirement of particularity indicates that the plaintiff must plead facts, and that it does not suffice merely to state in conclusionary terms that a demand would have been futile. However, under the federal system of notice pleading, it is necessary only that a reading of the facts pleaded indicates futility.

■ In the present case, the facts which are pleaded in paragraph 6 of the First Amended Complaint set forth a sufficient justification for failure to make a demand so as to render summary judgment inappropriate, and to allow the plaintiff to present evidence on this issue

at trial. The complaint alleges that the directors of Air Cal were officers or directors of Westgate, or served at the pleasure of the directors of Westgate. It is contended that these directors were acting to waste and loot the assets of Air Cal for the benefit of themselves and Westgate. Plaintiff further states that Westgate had entered into an agreement with PSA for sale of its controlling interest in Air Cal at a substantial profit. In light of these contentions, it would be unrealistic to expect the directors of Air Cal to bring an action against PSA to protect the interests of Air Cal, where such action would jeopardize the PSA-Westgate agreement, which these directors had approved personally.

Defendant's motions for summary judgment are denied.