**Bernard McTAMNEY, James Sullivan, Joseph S. Petralia, Plaintiffs,**

v.

**STOLT TANKERS AND TERMINALS (HOLDINGS), S.A., Stolt–Nielsen, Inc. and Stolt Tank Containers, Inc., Defendants.**

No. 87–0177.

United States District Court, E.D. Pennsylvania.

Dec. 29, 1987.

Raymond T. Cullen, Thomas G. Wilkinson, Jr., Morgan, Lewis & Bockius, Phila-

delphia, Pa., Manuel Llorca, Greenwich, Conn., for plaintiffs.

Paul N. Minkoff, Klovsky, Kuby and Harris, Philadelphia, Pa., for defendants.

## MEMORANDUM

LUDWIG, District Judge.

Defendants Stolt–Nielsen, Inc. and Stolt Tank Containers, Inc. move for judgment on the pleadings as to count III of the complaint.

This action claims violations by defendants [1] of section 2 of the Sherman Act, 15 U.S.C. § 2; section 7 of the Clayton Act, 15 U.S.C. § 18; together with pendent state torts, Pennsylvania common law restraint of trade and interference with contractual relations. Only the Clayton Act count—count III—is challenged by defendants' motion. Jurisdiction is federal question. 28 U.S.C. § 1331.

The complaint alleges: In January, 1986 plaintiffs McTamney and Sullivan began negotiations with the principals of United American Tank Containers Inc. (UATC) and American Tank Container, Ltd. (ATC). These companies, which McTamney and Sullivan desired to acquire, were engaged in transporting specialty liquid products in tank containers worldwide. Until January of 1986, plaintiff Petralia was an officer of both movant corporations, which were major rivals of UATC and ATC in this highly concentrated and intensely competitive transportation market. In April, 1986 McTamney and Sullivan notified UATC and ATC that Petralia had joined them as a co-purchaser. On May 9, 1986 "a full and complete understanding [was reached] as to the sale ... of the property and assets of UATC and ATC" to plaintiffs, who proceeded to obtain necessary financing. Complaint ¶ 22.

Meantime, according to the complaint, defendants, acting through their corporate officials, entered into a Sherman Act combination and conspiracy with the same principals of UATC and ATC as had dealt with plaintiffs. Their purpose was to eliminate competition in the industry and to prevent the contemplated sale of UATC and ATC. From June to August 1986, under defendants' direction, the activities of these companies were gradually wound down—and eventually were to be terminated. Defendants controlled the selective payment of their creditors. Upon termination, their principals were to receive preferential treatment. However, in mid-August, 1986 defendants withdrew from their agreement to buy UATC and ATC. As a result, UATC filed a voluntary petition in bankruptcy on September 18, 1986 in the bankruptcy court for the Southern District of Texas.

Defendants' motion for judgment on the pleadings,[2] Fed.R.Civ.P. 12(c), contests the applicability of section 7 of the Clayton Act, which provides:

> No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

15 U.S.C.A. § 18 (West Supp.1987).

Defendants contend that judgment on the pleadings is proper because the com-

---

1. The complaint against defendant Stolt Tankers and Terminals (Holdings), S.A. was dismissed without prejudice by stipulation on May 29, 1987.

2. Judgment on the pleadings requires the trial court "to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Society Hill Civic Ass'n v. Harris,* 632 F.2d 1045, 1058 (3d Cir.1980) (quoting 5 C. Wright & A. Miller, *Federal Practice and Proce-*

dure, § 1368 at 690 (1969)). "A motion for judgment on the pleadings is appropriate only when there are no issues of material fact and one party is entitled to judgment as a matter of law." *Damron v. Smith,* 616 F.Supp. 424, 425 (E.D.Pa.1985). "[C]ourts are generally unwilling to grant such a motion unless it is clear that the merits can be fairly and fully decided in this summary manner." *Jones v. Logue,* 615 F.Supp. 442, 443 (W.D.Pa.1985).

plaint does not allege an "acquisition" within the meaning of section 7. They assert that an unconsummated acquisition cannot constitute a section 7 "acquisition"; rather, there must be a completed acquisition.

Defendants' view of the breadth of section 7 of the Clayton Act is too narrow. The terms "acquisition" and "assets" have been interpreted broadly. *See, e.g., Nelson v. Pacific Southwest Airlines*, 399 F.Supp. 1025 (S.D.Cal.1975); *United States v. Columbia Pictures Corp.*, 189 F.Supp. 153 (S.D.N.Y.1960).

> As used here, the words "acquire" and "assets" are not terms of art or technical legal language. In the context of this statute, they are generic, imprecise terms encompassing a broad spectrum of transactions whereby the acquiring person may accomplish the acquisition by means of purchase, assignment, lease, license, or otherwise.

> .    .    .    .    .

> The statute imposes no specific method of acquisition. It is primarily concerned with the end result of a transfer of a sufficient part of the bundle of legal rights and privileges from the transferring person to the acquiring person to give the transfer economic significance and the proscribed adverse "effect."

*Id.* at 182. Courts have applied the term "acquisition" to a wide variety of transactions. *See, e.g., United States v. ITT Continental Baking Co.*, 485 F.2d 16 (10th Cir.1973), *rev'd on other grounds*, 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975) ("sales agreement" between a bakery company and a competing bakery was an indirect acquisition violative of an FTC order based on section 7 of the Clayton Act); *United States v. Archer–Daniels–Midland Co.*, 584 F.Supp. 1134 (S.D.Iowa 1984) (operating lease); *Columbia Pictures*, 189 F.Supp. 153 (exclusive license to distribute films).

In *Nelson v. Pacific Southwest Airlines*, 399 F.Supp. 1025 (S.D.Cal.1975), the court concluded that a terminated acquisition agreement fell within the purview of section 7 although the agreement was not executed. *Nelson* involved an agreement dated July 1972 between Pacific Southwest Airlines and Westgate California Corporation, under which PSA was to acquire Westgate's controlling stock interest in Air California, Inc. In July 1973, the acquisition agreement was terminated by mutual release. Plaintiff brought a derivative action against PSA and Westgate alleging violation of the Clayton Act. *Id.* at 1027. PSA contended that it was entitled to summary judgment because a "completed acquisition is an essential element of a Section 7 violation." *Id.* In denying PSA's motion, the court observed:

> In light of such broad constructions of the term "acquisition," this court cannot hold that an actual transfer of the stock of Air Cal from Westgate to PSA would be a necessary element of a Clayton Act violation. Section 7 was enacted as remedial legislation, designed to curtail the harm to a competitive economy caused by the concentration of economic power. Even if Westgate never actually transferred ownership of the Air Cal stock to PSA, harm to the plaintiff and to the economic system might have resulted from a less formal arrangement under which a single corporation achieved control of the decision making processes of the two largest air passenger carriers in the California air corridor.

*Id.* at 1028. The court further observed that "[i]f the plaintiff is able to demonstrate that PSA achieved significant control over the decision making processes or the property of Air Cal during the pendency of the agreement, then the agreement could constitute an acquisition for Section 7 purposes." *Id.* at 1029.

Plaintiffs claim that defendants planned and took preparatory steps to acquire UATC and ATC. They contend that from June to August 1986, defendants controlled the business activities of UATC and ATC including payments to particular creditors. Accepting the truth of these allegations, the defendants are not entitled to judgment as a matter of law. Plaintiffs should have the opportunity to obtain evidence, through

discovery, to support their contentions.[3]

The economic control analysis set forth in *Nelson v. Pacific Southwest Airlines* is realistic and sensible. Also, it is consistent with the interpretive theme of numerous cases considering the Clayton Act's purposes and applicability. The fact allegations of the present complaint bring this action within the parameters suggested by these decisions.

An order denying defendants' motion for judgment on the pleadings will be entered.

---

**3.** Defendants' brief discusses plaintiffs' standing to pursue a claim under § 7 of the Clayton Act. Citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), defendants contend that plaintiffs as competitors could not have suffered injury to their business or property even if defendants had acquired ATC and UATC. The issue is not referred to in defendants' motion.

The question of standing involves the subject matter jurisdiction of this court. *See, e.g., Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541–43, 106 S.Ct. 1326, 1331–32, 89 L.Ed.2d 501 (1986); *United States v. Philadelphia*, 482 F.Supp. 1248, 1252 (E.D.Pa.1979), *aff'd*, 644 F.2d 187 (3d Cir.1980). This memorandum does not consider the issue of plaintiffs' standing.